# EXHIBIT A

# THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

### INCORPORATED 1794

*Philadelphia, Pa.*

## C. V. STARR & CO.

### UNDERWRITING MANAGERS

**SAN FRANCISCO**    **SEATTLE**    **LOS ANGELES**    **PORTLAND**

426-0772

THE INSURANCE CO. OF THE STATE OF PENNSYLVANIA, A STOCK COMPANY, (HEREINAFTER CALLED THE COMPANY) DOES HEREBY INSURE

| AMOUNT | RATE | PREMIUM |
|---|---|---|
| $9,000,000.00 | | $ AS PER |
| $ | | $ ENDORSEMENT |
| $ | | $ NO. 1 ATTACHED |
| $ | | $ |
| | | |
| | | |
| | | |
| Total | | $ |

Assured: COUNTY OF SAN BERNARDINO AND SAN BERNARDINO FLOOD CONTROL DISTRICT, JOINTLY & SEVERALLY

Address: SAN BERNARDINO, CALIFORNIA

Policy Period from JULY 23, 1966 TO JULY 23, 1969 both days at 12:01 A.M. (Standard Time) at the location(s) of the risk(s) insured and in accord with the terms and conditions of the form(s) attached.

Amount $9,000,000.00

Coverage: UMBRELLA LIABILITY

Assignment of this Policy shall not be valid except with the written consent of this Company.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in this Policy.

Unless otherwise provided herein, this Policy may be cancelled on the customary short rate basis by the Assured at any time by written notice or by surrender or this Policy to the Company. This policy may also be cancelled, with or without the return or tender of the unearned premium, by the Company, or by the Underwriting Managers in its behalf, by delivering to the Assured or by sending to the Assured by regular mail, at the Assured's address as shown herein, not less than 10 days' written notice stating when the cancellation shall be effective, and in such case Insurers shall refund the paid premium less the earned portion thereof on demand, subject always to the retention by Insurers hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon) in the event of cancellation either by Insurers or Assured.

Not withstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is written, it is understood and agreed that whenever an additional or return premium of $2.00 or less becomes due from or to the Assured on account of the adjustment of deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

**In Witness Whereof,** the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

*Secretary*

*President*

C. V. STARR & CO.
UNDERWRITING MANAGERS

Countersigned    JULY 29, 1966    AFA/na.

By _____

ROBERT JEFFERY INSURANCE

# UMBRELLA POLICY

## DECLARATIONS

ITEM 1.  Named Assured:   COUNTY OF SAN BERNARDINO AND SAN BERNARDINO FLOOD CONTROL DISTRICT, JOINTLY & SEVERALLY

ITEM 2.  Limit of Liability — as Insuring Agreement II.
    (a) Limit in all in respect of each occurrence      $ 9,000,000.00
    (b) Limit in the aggregate for each annual period where applicable      $ 9,000,000.00
    (c) Self Insured Retention      $ 25,000.00

ITEM 3.  Notice of Occurrence (Condition G) to:   C.V.STARR & CO.

ITEM 4.  Currency (Condition Q):-   U.S.DOLLARS

ITEM 5.  Payment of Premium (Condition Q) to:   C.V.STARR & CO.

## SCHEDULE OF UNDERLYING INSURANCES

PACIFIC INDEMNITY COMPANY
POLICY NO. LP 10100

$1,000,000/1,000,000   BODILY INJURY LIABILITY INCLUDING AUTOMOBILE
$1,000,000   PROPERTY DAMAGE LIABILITY INCLUDING AUTOMOBILE

PACIFIC INDEMNITY COMPANY
POLICY NO. AP2-1298

DIFFERENCE BETWEEN $5,000,000 COMBINED SINGLE LIMIT AND $1,000,000/1,000,000 BODILY INJURY & $1,000,000 PROPERTY DAMAGE – AIRPORT LIABILITY

Named Assured:   As stated in Item 1 of the Declarations forming a part hereof and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company. (Hereinafter called the "Named Assured").

Attached to and forming part of Policy No.   426-0772

Issued to: COUNTY OF SAN BERNARDINO, ETAL

Dated:   JULY 29, 1966

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

C.V. STARR & CO.
Underwriting Managers

By _____

(Provisions on pages 2, 3 and 4 are hereby referred to and made a part hereof.)

S-287

ROBERT JEFFERY INSURANCE

# INSURING AGREEMENTS

## COVERAGE

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter-mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability.

(a) Imposed upon the Assured by law,

or

(b) Assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages, direct or consequential and expenses, all as more fully defined by the term "ultimate net loss" on account of:-

(i) Personal injuries, including death at any time resulting therefrom,
(ii) Property Damage,
(iii) Advertising liability,

caused by or arising out of each occurrence happening anywhere in the world.

## II. LIMIT OF LIABILITY

The Company shall only be liable for the ultimate net loss the excess of either

(a) the limits of the underlying insurances as set out in the schedule in respect of each occurrence covered by said underlying insurances,

o (b) the amount as set out in the declarations as the self-insured retention in respect of each occurrence not covered by said underlying insurances,

(hereinafter called the "Underlying Limits"):

and then only up to a further sum as stated in Item 2(a) of the Declarations in all in respect of each occurrence - subject to a limit as stated in Item 2(b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease ained by any employees of the Assured.

In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurances by reason of losses paid thereunder, this policy shall

(1) in the event of reduction pay the excess of the reduced underlying limit

(2) in the event of exhaustion continue in force as underlying insurance.

The inclusion or addition hereunder of more than one Assured shall not operate to increase the Company's limit of liability.

THIS POLICY IS SUBJECT TO THE FOLLOWING DEFINITIONS:

## 1. ASSURED —

The unqualified word "Assured", wherever used in this policy, includes not only the Named Assured but also —

(a) any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such, and any organization or proprietor with respect to real estate management for the Named Assured;

(b) any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only in respect of operations by or on behalf of the Named Assured or of facilities of the Named Assured or used by them;

(c) any additional assured (not being the Named Assured under this policy) included in the Underlying Insurances, subject to the provisions in Condition B; but not for broader coverage than is available to such additional Assured under any underlying insurances as set out in attached Schedule;

(d) with respect to any automobile owned by the Named Assured or hired for use in behalf of the Named Assured, or to any aircraft owned by or hired for use in behalf of the Named Assured, any person while using such automobile or aircraft and any person or organization legally responsible for the use thereof, provided the actual use of the automobile or aircraft is with the permission of the Named Assured. The insurance extended by this sub-division (d), with respect to any person or organization other than the Named Assured, shall not apply —

1. to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station, or public parking place, with respect to any occurrence arising out of the operation thereof;

S-287

2. to any manufacturer of aircraft, engines, or aviation accessories, or any aviation sales or service or repair organization or airport or hangar operator or their respective employees or agents with respect to any occurrence arising out of the operation thereof;

3. with respect to any hired automobile or aircraft, to the owner thereof or any employee of such owner. This sub-division (d) shall not apply if it restricts the insurance granted under sub-division (c) above.

## 2. PERSONAL INJURIES —

The term "Personal Injuries" wherever used herein means bodily injury, mental injury, mental anguish, shock, sickness, disease, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination, humiliation, also libel, slander or defamation of character or invasion of rights of privacy, except that which arises out of any Advertising activities.

## 3. PROPERTY DAMAGE —

The term "Property Damage" wherever used herein shall mean loss of or direct damage to or destruction of tangible property (other than property owned by the Named Assured).

## 4. ADVERTISING LIABILITY —

The term "Advertising Liability" wherever used herein shall mean:-

(a) Libel, slander or defamation;

(b) Any infringement of copyright or of title or of slogan;

(c) Piracy or unfair competition or idea misappropriation under an implied contract;

(d) Any invasion of right of privacy;

committed or alleged to have been committed in any advertisement, publicity article broadcast or telecast and arising out of the Named Assured's Advertising activities.

## 5. OCCURRENCE —

The term "Occurrence" wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

## 6. ULTIMATE NET LOSS —

The term "Ultimate Net Loss" shall mean the total sum which the Assured, or any company as his insurer, or both, become obligated to pay by reason of personal injury, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Assured's or of any underlying insurer's permanent employees.

The Company shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance.

## 7. AUTOMOBILE —

The term "Automobile", wherever used herein, shall mean a land motor vehicle, trailer or semi-trailer.

## 8. AIRCRAFT —

The term "Aircraft", wherever used herein, shall mean any heavier than air or lighter than air aircraft designed to transport persons or property.

## 9. PRODUCTS LIABILITY —

The term "Products Liability" means

(a) Liability arising out of goods or products manufactured, sold, handled or distributed by the Named Assured or by others trading under his name if the occurrence occurs after possession of such goods or products has been relinquished to others by the Named Assured or by others trading under name and if such occurrence occurs away from

premises owned, rented or controlled by the [ ]ed Assured; provided such goods or products shall be deemed [ ] include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use or others but not sold;

(b) Liability arising out of operations, if the occurrence occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the Named Assured; provided operations shall not be deemed incomplete because improperly defectively performed or because further operations may be required pursuant to an agreement; provided further the following shall not be deemed to be "operations" within the meaning of this paragraph: (i) pick-up or delivery, except from or onto a railroad car, (ii) the maintenance of vehicles owned or used by or in behalf of the Assured, (iii) the existence of tools, uninstalled equipment and abandoned or unused materials.

## 10. ANNUAL PERIOD —

The term "each Annual Period" shall mean each consecutive period of one year commencing from the inception date of this Policy.

## THIS POLICY IS SUBJECT TO THE FOLLOWING EXCLUSIONS:

This policy shall not apply:-

(a) to any obligation for which the Assured or any company as its insurer may be held liable under any Workmen's Compensation, unemployment compensation or disability benefits law provided, however, that this exclusion does not apply to liability of others assumed by the Named Assured under contract or agreement;

(b) to claims made against the Assured;

(i) for repairing or replacing any defective product or products manufactured, sold or supplied by the Assured or any defective part or parts thereof nor for the cost of such repair or replacement;

(ii) for the loss of use of any such defective product or products or part or parts thereof;

(iii) for improper or inadequate performance, design or specification; but nothing herein contained shall be construed to exclude claims made against the Assured for personal injuries or property damage (other than damage to a product of the Assured) resulting from improper or inadequate performance, design or specification;

(c) with respect to advertising activities, to claims made against the Assured for:

(i) failure of performance of contract, but this shall not relate to claims for unauthorized appropriation of ideas based upon alleged breach of an implied contract;

(ii) infringement of registered trade mark, service mark or trade name by use thereof as the registered trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans;

(iii) incorrect description of any article or commodity;

(iv) mistake in advertised price;

(d) except in respect of occurrences taking place in the United States of America, its territories or possession, or Canada, to any liability of the Assured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities, (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

Except insofar as coverage is available to the Assured in the underlying insurances as set out in the attached Schedule, this policy shall not apply:-

(e) to liability of any Assured hereunder for assault and battery committed by or at the direction of such Assured except liability for Personal Injury or Death resulting from any act alleged to be assault and battery committed for the purpose of preventing or eliminating danger in the operation of aircraft, or for the purpose of preventing personal injury r property damage; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above.

S-287

(f) with respect to any [ ]raft owned by the Assured except liability of the Named Assured [ ]ircraft not owned by them; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(g) with respect to any watercraft owned by the Assured, while away from premises owned, rented or controlled by the Assured, except liability of the Named Assured for watercraft not owned by them; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(h) to any employee with respect to injury to or the death of another employee of the same Employer injured in the course of such employment.

## THIS POLICY IS SUBJECT TO THE FOLLOWING CONDITIONS —

### A. PREMIUM —

Unless otherwise provided for the premium for this Policy is a flat premium and is not subject to adjustment except as provided in Conditions B AND P.

### B.

In the event of additional assureds being added to the coverage under the Underlying Insurances during currency hereof prompt notice shall be given to the Company hereon and if an additional premium has been charged for such addition on the Underlying Insurances, the Company shall be entitled to charge an appropriate additional premium hereon.

### C. PRIOR INSURANCE NON CUMULATION OF LIABILITY —

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Item 2 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

Subject to the foregoing paragraph and to all the other terms and conditions of this policy in the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this policy the Company will continue to protect the Assured for liability in respect of such personal injury or property damage without payment of additional premium.

### D. SPECIAL CONDITIONS APPLICABLE TO OCCUPATIONAL DISEASE —

As regards personal injury (fatal or non-fatal) by occupational disease sustained by any employee of the Assured, this policy is subject to the same warranties, terms and conditions (except as regards the premium, the amount and limits of liability and the renewal agreement, if any) as are contained in or as may be added to the underlying insurances prior to the happening of an occurrence for which claim is made hereunder.

### E. INSPECTION AND AUDIT —

The Company shall be permitted at all reasonable times during the policy period to inspect the premises, plants, machinery and equipment used in connection with the Assured's business, trade or work, and to examine the Assured's books and records at any time during the currency hereof and within one year after final settlement of all claims so far as the books and records relate to any payments made on account of occurrences happening during the term of this policy.

### F. CROSS LIABILITY —

In the event of claims being made by reason of personal injuries suffered by any employee or employees of one Assured hereunder for which another Assured hereunder is or may be liable, then this policy shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured hereunder.

In the event of claims being made by reason of damage to property belonging to any Assured hereunder for which another Assured is or may be, liable then this policy shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured hereunder.

Nothing contained herein shall operate to increase the Company's limit of liability as set forth in Insuring Agreement II.

## G. NOTICE OF OCCURRENCE –

Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 3 of the declarations as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

## H. ASSISTANCE AND CO-OPERATION –

The Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but the Company shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve the Company, in which event the Assured and the Company shall co-operate in all things in the defense of such claim, suit or proceeding.

## I. APPEALS –

In the event the Assured or the Assured's underlying insurers elect not to appeal a judgment in excess of the underlying limits, the Company may elect to make such appeal at their cost and expense, and shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in Insuring Agreement II for any one occurrence and in addition the cost and expense of such appeal.

## J. LOSS PAYABLE –

Liability under this policy with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence. The Assured shall make a definite claim for any loss for which the Company may be liable under the policy within twelve (12) months after the Assured shall have paid an amount of ultimate net loss in excess of the amount borne by the Assured or after the Assured's liability shall have been fixed and rendered certain either by final judgment against the Assured after actual trial or by written agreement of the Assured, the claimant, and the Company. If any subsequent payments shall be made by the Assured on account of the same occurrence additional claims shall be made similarly from time to time. Such losses shall be due and payable within thirty (30) days after they are respectively claimed and proven in conformity with this policy.

## K. BANKRUPTCY AND INSOLVENCY –

In the event of the bankruptcy or insolvency of the Assured or any entity comprising the Assured, the Company shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

## L. OTHER INSURANCE –

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

## M. SUBROGATION –

Inasmuch as this policy is "Excess Coverage", the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Company. It is, therefore, understood and agreed that in case of any payment hereunder, the Company will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

## N. CHANGES –

Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the Company.

## O. ASSIGNMENT –

Assignment of interest under this policy shall not bind the Company unless and until their consent is endorsed hereon.

## P. CANCELLATION –

This policy may be cancelled by the Named Assured or by the Company or their representatives by sending by registered mail notice to the other party stating when, not less than ten (10) days thereafter, cancellation shall be effective. The mailing of notice as aforesaid by the Company or their representatives to the Named Assured at the address shown in this policy shall be sufficient proof of notice, and the insurance under this policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Company or their representatives shall be equivalent to mailing.

If this policy shall be cancelled by the Named Assured the Company shall retain the customary short rate proportion of the premium for the period this policy has been in force. If this policy shall be cancelled by the Company the Company shall retain the pro rata proportion of the premium for the period this policy has been in force. Notice of cancellation by the Company shall be effective even though the Company makes no payment or tender of return premium with such notice.

## Q. CURRENCY –

The premiums and losses under this policy are payable in the currency stated in Item 4 of the Declarations. Payment of Premium shall be made as stated in Item 5 of the Declarations.

## R. CONFLICTING STATUTES –

In the event that any provision of this policy is unenforceable by the Assured under the laws of any State or other jurisdiction wherein it is claimed that the Assured is liable for any injury covered hereby, because of non-compliance with any statute thereof, then this policy shall be enforceable by the Assured with the same effect as if it complied with such Statute.

## S. MAINTENANCE OF UNDERLYING INSURANCES –

It is a condition of this policy that the policy or policies referred to in the attached "Schedule of Underlying Insurances" shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this policy. Failure of the Assured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as they would have been had the Assured complied with the said condition.

S-287

U.S.A

# NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—DIRECT (BROAD)

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:—*

> *Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),*

*not being insurances of the classifications to which the Nuclear Incident Exclusion Clause—Liability—Direct (Limited) applies.*

This policy*

does not apply:—

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

    (a)   with respect to which an insured under the policy is also an insured under a nuclear energy libability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b)   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a)   the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

    (b)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (c)   the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

    **"hazardous properties"** include radioactive, toxic or explosive properties; **"nuclear material"** means source material, special nuclear material or byproduct material; **"source material"**, **"special nuclear material"**, and **"byproduct material"** have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; **"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; **"waste"** means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; **"nuclear facility"** means

    (a)   any nuclear reactor,

    (b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; **"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

    With respect to injury to or destruction of property, the word **"injury"** or **"destruction"** includes all forms of radioactive contamination of property.

    It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

    *Note:—As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

EXHIBIT A, Page 24

N.M.A. 1256

## ENDORSEMENT NO.  1

In consideration of the reduced premium at which
this Policy is issued, it is understood and
agreed that the total premium shall be payable
in installments as follows:

| Due Date | Amount |
|---|---|
| 7/23/1966 | $6,250.00 |
| 7/23/1967 | $6,250.00 |
| 7/23/1968 | $6,250.00 |

All other terms and conditions remain unchanged

Effective date of this endorsement is: JULY  23,1966

Attached to and forming part of  Policy No.   426-0772

Issued to:  COUNTY OF SAN BERNARDINO, ET AL

ROBERT JEFFERY INSURANCE

THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA

Dated: JULY  29,1966

C. V. STARR & CO.
Underwriting Managers

SSP 39 (1/66)

By_____

ENDORSEMENT NO. 2

It is hereby understood and agreed that the name of the Assured is amended to read as follows:

    COUNTY OF SAN BERNARDINO and
    SAN BERNARDINO COUNTY FLOOD CONTROL DISTRICT,
    JOINTLY & SEVERALLY

All other terms and conditions remain unchanged

Effective date of this endorsement is:  JULY 23, 1966

Attached to and forming part of No.  426-0772

Issued to:  COUNTY OF SAN BERNARDINO, ET AL

Dated:    August 3, 1966

AFA:cg

S 44-S

THE INSURANCE COMPANY OF
THE STATE OF PENNSYLVANIA
C. V. STARR & CO.
Underwriting Managers

By_____

EXHIBIT A - Page 26