Keith A. Meyer (SBN 106104)
kmeyer@reedsmith.com
Amber S. Finch (SBN 222321)
afinch@reedsmith.com
Anthony S. Newman (SBN 235514)
anewman@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2800
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000

Thomas Bunton (SBN 193560)
County Counsel
Maria L. Insixiengmay (SBN 281205)
maria.insixiengmay@cc.sbcounty.gov
Deputy County Counsel
SAN BERNARDINO COUNTY
COUNSEL
385 N. Arrowhead Avenue, Fourth Floor
San Bernardino, CA 92415-0140
Telephone: +1 909 387 5455

Attorneys for Plaintiff
San Bernardino County

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN BERNARDINO COUNTY, a California public entity,

Plaintiff,

vs.

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania insurance company,

Defendant.

Case No. 5:21-cv-01978-PSG-JEM

**SAN BERNARDINO COUNTY'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT RE: BREACH OF ICSOP'S DUTY TO PAY DEFENSE COSTS AND ICSOP'S THIRD THROUGH SIXTH AND NINTH THROUGH FIFTEENTH AFFIRMATIVE DEFENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

[Filed concurrently with Separate Statement of Undisputed Material Facts; Declaration of Anthony S. Newman; and [Proposed] Order]

Hearing Date: April 7, 2023
Time: 1:30 p.m.
Courtroom: 6A

Honorable Philip S. Gutierrez

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 7, 2023, or as soon thereafter as the parties can be heard in Courtroom 6A, First Street Courthouse, 350 West 1st Street, 6th Floor, Los Angeles, California 90012-45652, Plaintiff San Bernardino County (the "County"), will and does move for partial summary judgment on the grounds that: (1) Defendant The Insurance Company of the State of Pennsylvania ("ICSOP") breached its duty to reimburse the County for its ongoing investigation costs arising from the groundwater contamination beneath the Chino Airport; and (2) ICSOP cannot establish its 3rd, 4th, 5th, 6th, 9th, 10th, 11th, 12th, 13th, 14th, and 15th Affirmative Defenses.

**Breach of ICSOP's Duty to Reimburse Ongoing Investigation Costs**

This case relates to the County's claim for insurance coverage under three umbrella liability insurance policies (the "Policies") issued by ICSOP to the County, covering the period from July 1966 to July 1975, for losses resulting from groundwater contamination allegedly caused by a variety of historical operations at the County-owned Chino Airport (the "Chino Claim"). Each of the Policies has a $9 million per-occurrence limit for property damage claims. The groundwater contamination has been the subject of three Cleanup and Abatement Orders ("CAOs") issued by the California Regional Water Quality Control Board ("CRWQCB") in 1990, 2008, and 2017, which require the County to investigate and remediate the contamination.

In March 2008, the County gave ICSOP notice of correspondence it had received from regulatory authorities, including the 1990 CAO, alleging that a contamination plume emanating from the Chino Airport would have to be remediated and that legal action would follow if an agreement were not reached to compensate them for costs associated with addressing the contamination.

In response to the County's notice, ICSOP reserved its right to deny coverage on numerous bases. In 2012, the County initiated coverage litigation against ICSOP in

California state court alleging that ICSOP was improperly delaying and denying reimbursement of the County's costs in connection with the Chino Claim. In response, ICSOP demurred to the County's complaint, asserting that ICSOP had no duty to pay any amounts to the County because the County's liability for the groundwater contamination had not yet been fixed by adjudication or settlement. That demurrer was overruled in July 2012, and ICSOP thereafter began paying the County's investigation and remediation costs.

In September 2021, ICSOP unilaterally decided that it would not pay the County anything more. ICSOP contended that: (1) only a single policy was applicable to the Chino Claim; (2) the per occurrence limit of that policy was $9 million; (3) the groundwater contamination arose from a single occurrence; and (4) because ICSOP already had paid $9 million toward the Chino Claim, ICSOP had no further obligations to the County for that claim. In response, the County disputed ICSOP's conclusion that the County's loss arose from a single occurrence, pointing out that the site involved the operations of multiple parties over a period of many decades, a variety of contaminants, a variety of waste disposal methods, multiple source areas, and two different groundwater plumes that contained different contaminants and originated from different areas of the Airport. ICSOP did not change its position, and this litigation ensued.

Through this motion, the County seeks an order that ICSOP has breached the Policies by refusing to reimburse the County's investigative costs in excess of $9 million without conclusively refuting the potential for additional occurrences – and the potential that additional $9 million per-occurrence limits apply.

///

///

///

///

///

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**The County is Entitled to Summary Judgment on ICSOP's Third through Sixth and Ninth through Fifteenth Affirmative Defenses**

Among the affirmative defenses asserted in ICSOP's Answer (ECF No. 19) are the following:

- Third Affirmative Defense: The County's claims are barred in whole or part, by the equitable doctrine of laches.
- Fourth Affirmative Defense: The County's claims are barred in whole or part, by the equitable doctrine of waiver.
- Fifth Affirmative Defense: The County's claims are barred in whole or part, by the equitable doctrine of estoppel.
- Sixth Affirmative Defense: The County's claims are barred in whole or part, by the equitable doctrine of unclean hands.
- Ninth Affirmative Defense: The County's claims are barred to the extent that the County failed to provide proper notice of the claim at issue.
- Tenth Affirmative Defense: The County's claims are barred to the extent that the County failed to assist and cooperate as required by the Policies.
- Eleventh Affirmative Defense: The County's claims are barred to the extent that other valid and collectible insurance is available to cover the alleged loss.
- Twelfth Affirmative Defense: The County's claims are barred based on the Loss Payable provision of the Policies.
- Thirteen Affirmative Defense: The County failed to exercise reasonable care and diligence to mitigate any damages sustained by reason of ICSOP's alleged acts. Therefore, any damages awarded to the County shall be limited to the damages the County would have sustained had the County mitigated its damages.

- Fourteenth Affirmative Defense: The County's claims are barred and/or limited to the extent they failed to maintain the policies referred to in the Policies' Schedules of Underlying Insurances.
- Fifteenth Affirmative Defense: The County is barred from any recovery as to ICSOP, in that any damage proven to have been sustained by the County was caused by the intervening action or actions of the County and/or other persons or parties that were a superseding cause of County's damages and not due to any act or omission on the part of ICSOP.

(ECF No. 19 at 8-9.) Although discovery taken by the County required ICSOP to disclose all facts that supported these affirmative defense, ICSOP has failed to disclose facts that would support any of these defenses. The County thus is entitled to summary judgment in its favor and against ICSOP on each of them.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Anthony S. Newman and exhibits attached thereto, and all other evidence and argument considered by the Court at or before the hearing on this Motion.

Pursuant to Local Rule 7-3, this Motion is made following the conference of counsel which took place on February 8, 2023.

DATED: February 15, 2023 REED SMITH LLP

By: */s/ Anthony S. Newman*
Anthony S. Newman
Attorneys for Plaintiff
San Bernardino County

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## TABLE OF CONTENTS


Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. STATEMENT OF FACTS ..... 3

A. The ICSOP Policies ..... 3

B. The County Notifies ICSOP of Claims against it and ICSOP recognizes that the County's Primary Policies Do Not Apply ..... 4

C. The County's State Court Coverage Action against ICSOP ..... 5

D. ICSOP Recognizes the Potential for Multiple Occurrences, but Nevertheless Ceases Paying the County's Costs ..... 5

E. ICSOP Unilaterally Ceases Paying the County's Costs ..... 8

F. The County Files Suit and ICSOP Once Again Denies Coverage ..... 9

III. LEGAL STANDARDS ..... 9

IV. ARGUMENT ..... 9

A. ICSOP Breached the Policies by Ceasing to Pay Costs in 2021 ..... 11

1. ICSOP Must Reimburse the County's Costs as they Are Incurred ..... 11

2. ICSOP Must Pay Costs for Potentially Covered Claims ..... 12

3. The CAOs Are Covered Claims that Potentially Involve Multiple Occurrences ..... 15

B. ICSOP Cannot Establish Its "Late Notice" Defenses ..... 19

1. ICSOP Cannot Establish its Ninth Affirmative Defense (Notice) ..... 20

2. ICSOP Cannot Establish its Other "Late Notice" Defenses ..... 22

C. ICSOP Cannot Establish Its 11th, 12th, 13th, 14th, or 15th Affirmative Defenses ..... 23

V. CONCLUSION ..... 25


REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acacia Research Corp. v. Nat'l Union Fire Ins. Co.*, No. CV 05-501 PSG, 2008 U.S. Dist. LEXIS 96955 (C.D. Cal. Feb. 8, 2008) ..... 13

*AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807 (1990) ..... 15

*Am. States Ins. Co. v. Ins. Co. of the State of Pa.*, 800 F. App'x 452 (9th Cir. 2020) ..... 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..... 9, 10

*Aubin Indus. v. Caster Concepts, Inc.*, No. 2:14-cv-02082-MCE-CKD, 2015 U.S. Dist. LEXIS 82881 (E.D. Cal. June 23, 2015) ..... 22

*Braden Partners, LP v. Twin City Fire Ins. Co.*, No. 14-cv-01689-JST, 2016 U.S. Dist. LEXIS 180958 (N.D. Cal. Dec. 20, 2016) ..... 13, 14

*Cadence Design Sys. v. Syntronic AB*, No. 21-cv-03610-SI, 2022 U.S. Dist. LEXIS 80494 (N.D. Cal. May 3, 2022) ..... 22

*Cannon Elec., Inc. v. ACE Prop. & Cas. Ins. Co.*, No. BC290354, slip op at pp. 6-8 (Cal. Super. Ct. April 9, 2019) ..... 11, 12

*Carrier Corp. v. Allstate Ins. Co.*, No. 2005-EF-7032, 2020 N.Y. Misc. LEXIS 2593 (N.Y. Sup. Ct. May 20, 2020) ..... 12

*Certain Underwriters at Lloyd's v. Chicago Bridge & Iron Co.*, 406 S.W.3d 326 (Tex. App. 2013) ..... 12

*Cruz v. Cty. of Dupage*, No. 96 C 7170, 1998 U.S. Dist. LEXIS 18787 (N.D. Ill. Nov. 19, 1998) ..... 11, 12

*Dana Cos. v. Am. Employers' Ins. Co.*,
No. 49D14-1012-PL-053501, 2013 Ind. Super. LEXIS 17 (Ind. Super. Ct. May 6, 2013) .......... 12

*Deere & Co. v. Allstate Ins. Co.*,
32 Cal. App. 5th 499 (2019) .......... 11, 12

*Devereaux v. Abbey*,
263 F.3d 1070 (9th Cir. 2001) .......... 9

*Forkum v. Coop. Adjustment Bureau, Inc.*,
44 F. Supp. 3d 959 (N.D. Cal. 2014) .......... 9

*Gon v. First State Ins. Co.*,
871 F.2d 863 (9th Cir. 1989) .......... 11, 15

*Hartford Accident & Indem. Co. v. Superior Court*,
23 Cal. App. 4th 1774 (1994) .......... 18, 19

*Ins. Co. of the State of Pa. v. Associated Int'l Ins. Co.*,
922 F.2d 516 (9th Cir. 1990) .......... 20, 21

*Ins. Co. of the State of Pa. v. Cty. of San Bernardino*,
No. EDCV 16-0128 .......... 16

*Intel Corp. v. Hartford Accident & Indem. Co.*,
952 F.2d 1551 (9th Cir. 1991) .......... 15

*Ironshore Specialty Ins. Co. v. Crosby Estate At Rancho Santa Fe Master Ass'n*,
No. 21-cv-1249-WQH-AHG, 2022 U.S. Dist. LEXIS 216293 (S.D. Cal. Nov. 30, 2022) .......... 15

*Kelly v. William Morrow & Co.*,
186 Cal. App. 3d 1625 (1986) .......... 22

*Legacy Vulcan Corp. v. Superior Court*,
185 Cal. App. 4th 677 (2010) .......... 14

*Lennar Mare Island v. Steadfast Ins. Co.*,
176 F. Supp. 3d 949 (E.D. Cal. 2016) .......... 16

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Liberty Mut. Fire Ins. Co. v. Bosa Dev. Cal. II, Inc.*, No. 17-cv-0666-AJB-BGS, 2020 U.S. Dist. LEXIS 65243 (S.D. Cal. Apr. 9, 2020) .......... 19

*Liberty Mut. Ins. Co. v. Superior Court*, 58 Cal. App. 4th 617 (1997) .......... 18

*Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287 (1993) .......... 18

*Nw. Title Sec. Co. v. Flack*, 6 Cal. App. 3d 134 (1970) .......... 21

*Olympic Club v. Those Interested Underwriters at Lloyd's London*, 991 F.2d 497 (9th Cir. 1993) .......... 13

*Powerine Oil Co., Inc. v. Superior Court*, 37 Cal. 4th 377 (2005) .......... 13

*Renovate Am., Inc. v. Lloyd's Syndicate 1458*, No. 3:19-cv-01456-GPC-WVG, 2019 U.S. Dist. LEXIS 212874 (S.D. Cal. Dec. 10, 2019) .......... 11

*Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643 (2005) .......... 19

*Sentry Select Ins. Co. v. Royal Ins. Co. of Am.*, 481 F.3d 1208 (9th Cir. 2007) .......... 14

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715 (1993) .......... 21

**Statutes**

Cal. Code Civ. Proc. § 1856 (c) .......... 15

**Rules**

Fed. R. Civ. Proc. 56(a) .......... 9

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This case concerns insurance coverage for costs San Bernardino County (the "County") has incurred to investigate and remediate groundwater contamination allegedly emanating from the Chino Airport under three multi-year insurance policies (the "Policies") issued to the County by The Insurance Company of the State of Pennsylvania ("ICSOP").

Although ICSOP has raised a host of boilerplate defenses in response to the County's claim for insurance coverage (the "Chino Claim"), the principal issue in this case is the number of occurrences from which the contamination arose. Each of the Policies is subject to a $9 million limit of liability for each occurrence. ICSOP has reimbursed the County for $9 million in costs relating to the Chino Claim, but has refused to pay any other amounts, claiming that the groundwater contamination arose from a single occurrence, even though it was caused by numerous different tenants, conducting a variety of different operations, over a period of many decades, who utilized different chemicals and different waste disposal methods, resulting in multiple and geographically distinct releases of contaminants at the Airport.

By the time ICSOP withdrew coverage in 2021, its own personnel recognized that there was a ***potential*** for multiple occurrences, and that multiple $9 million per-occurrence limits might apply. Indeed, almost seven years ago, ICSOP raised its internal cost forecast for the Chino Claim to many multiples of the $9 million per-occurrence limit, explicitly noting that one reason for the increase was the possibility of multiple occurrences.

ICSOP's decision to increase its cost forecast to multiples of the $9 million per-occurrence limit was not made in a vacuum. It was made in light of the extensive information ICSOP had showing the contamination resulted from many different operations at the Chino Airport, conducted by many different entities, using different chemicals, and different disposal methods, at different times, and in different parts of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

the site. ICSOP also was aware that there were two parallel groundwater plumes under the Chino Airport that originated from different parts of the site and that contained different contaminants.

ICSOP's unilateral decision to cease funding the County's costs breached the Policies. The County's investigative efforts were defensive in nature, and California law is clear that an insurer must fulfill its defense duties to its insured until the insurer ***proves*** that there is no longer a potential for coverage and obtains a court order to that effect. California law also provides that once an insurer has recognized a potential for coverage, as ICSOP did here, it cannot simply yank the rug out from under the insured and cease funding the insured's efforts based on a unilateral determination that policy limits have been exhausted. Here, however, ICSOP did just that and withdrew coverage despite its own recognition that the contamination potentially arose from multiple occurrences and in the face of its insured's objection that withdrawing coverage based on a "single occurrence" was improper. There are no disputed issues of material fact, and this Court should find that ICSOP breached its obligations under the Policies by unilaterally withdrawing coverage.

There also are no disputed issues of material fact that would prevent this Court from granting summary judgment to the County on ICSOP's third through sixth and ninth through fifteenth affirmative defenses. Six of those defenses, though purportedly based on different legal theories, are all based on ICSOP's assertion that the County's notice of the claim was untimely. But untimely notice is a defense to coverage only when the insurer can show that it was substantially prejudiced and would have achieved a better outcome had notice been provided earlier. ICSOP has identified no facts that meet that heavy burden here. Moreover, the fact that ICSOP has taken (and continues to take) the position that there is no coverage on numerous grounds other than late notice shows that ICSOP was not prejudiced as a matter of law because earlier notice would just have resulted in an earlier denial of coverage. Most telling of all, however, is ICSOP's payment of $9 million toward the County's costs without

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

ever reserving its right to recoup any such payments based on late notice – a course that no insurer with a legitimate right to assert such defenses would have taken. ICSOP's actions speak louder than its words. There is no support for its "late notice" defenses, regardless of the legal theories on which they are based.

The remaining Affirmative Defenses that are the subject of this Motion are equally lacking in merit, with one of them – ICSOP's Twelfth Affirmative Defense – having already been rejected in previous litigation between the parties. Because these affirmative defenses have no factual support, this Court should grant summary judgment against ICSOP and in favor of the County on each of them.

## II. STATEMENT OF FACTS

### A. The ICSOP Policies

ICSOP issued three umbrella liability insurance policies to the County, each with a three-year term: (1) Policy No. 426-0772, for the period July 23, 1966 to July 23, 1969 (the "66-69 Policy"); Policy No. 429-0989, for the period July 23, 1969 to July 23, 1972 (the "69-72 Policy"); and (3) Policy No. 4272-1195, for the period July 23, 1972 to July 23, 1975 (the "72-75 Policy"). (Declaration of Anthony S. Newman ("Newman Decl.") at Exs. A-C.) The Policies contain identical terms and conditions insofar as relevant to this Motion. (*Id.*)

The Policies provide that ICSOP will "indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability … imposed upon the Assured by law … for … 'ultimate net loss' on account of … Property Damage … caused by or arising out of each occurrence…" and define "ultimate net loss" to include "expenses for … lawyers … and investigators and other persons, and for … investigation of claims…." (Newman Decl., Ex. A at PI00059 [§ I Coverage]; Ex. B at PI00066; Ex. C at PI00073.) The Policies define "Property Damage" to mean "loss of or direct damage to … tangible property (other than property owned by the Named Assured)." (Newman Decl., Ex. A at PI00059 [Definition 3]; Ex. B at PI00066; Ex. C at PI00073.) The Policies define "Occurrence," in relevant part, as follows:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

> The term "Occurrence" … shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in property damage … during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

(Newman Decl., Ex. A at PI00059 [Definition 5]; Ex. B at PI00066; Ex. C at PI00073.) Each of the Policies has per-occurrence limits of $9 million. (Newman Decl., Ex. A at PI00058 [Declarations]; Ex. B at PI00065; Ex. C at PI00072.)

**B. The County Notifies ICSOP of Claims against it and ICSOP recognizes that the County's Primary Policies Do Not Apply**

On March 25, 2008, the County notified ICSOP that regulatory authorities had threatened to hold the County liable for groundwater contamination allegedly emanating from the Chino Airport. (Newman Decl., Ex. I at PIMG001524-25; Ex. H at 19:7-19:20; 30:23-31:2, 110:25-111:4.) The County's notice letter informed ICSOP, *inter alia*, that on October 30, 1990, the California Regional Water Quality Control Board ("CRWQCB") had issued Cleanup and Abatement Order No. 90-143 (the "1990 CAO"), which required the County to take various actions to investigate and remediate the groundwater contamination beneath and downgradient of the Chino Airport. (Newman Decl., Ex. F; Ex. G at 20:14-20:21, 21:3-22:2; 24:6-13105:19-107:16, 107:18-108:12.) Additional CAOs were issued to the County in 2008 and 2017. (*See* Newman Decl., Exs. J & K.)

The County's lower level policies only apply to "suits" and not "claims," but the ICSOP Policies respond to both suits and claims. ICSOP thus recognized that its umbrella policies were required to "drop down" and provide coverage for the CRWQCB's claims against the County. (Newman Decl., Ex. V at PIRK000415 ["ICSOP is obligated to drop down due to the absence of any suits that would implicate the primary…."]; Newman Decl., Ex. V. at PIRK000414 ["There is no available primary coverage…. The umbrella language, conversely, has been construed to cover costs incurred in responding to administrative claims."].)




REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**C. The County's State Court Coverage Action against ICSOP**

In March 2012, as a result of disputes between ICSOP and the County concerning payment of the County's costs, the County sued ICSOP in California state court, alleging that ICSOP had breached the Policies and engaged in bad faith by failing to promptly pay amounts owed for the Chino Claim. (Newman Decl., Ex. L at p. 1-2, 4-5.) ICSOP responded to the County's lawsuit by filing a demurrer contending that its Policies did not cover investigative costs because the Policies are "indemnity only," and thus do not attach "until the liability of the insured is fixed by adjudication or settlement." (*Id.*, Ex. M at 3:15-22.) The state court rejected ICSOP's position and overruled its demurrer. (*Id.*, Ex. N.) ICSOP's internal documents confirm that ICSOP understood the import of this ruling for its obligations to the County: "ICSOP argued unsuccessfully that its indemnity obligation, as it related to the reimbursement of defense costs, did not attach until the insured's liability was finally determined. The court determined that ICSOP was required to reimburse defense costs as those costs were incurred." (*Id.*, Ex. V at PIRK000415.)

**D. ICSOP Recognizes the Potential for Multiple Occurrences, but Nevertheless Ceases Paying the County's Costs**

ICSOP's internal documents and its witnesses readily acknowledge what investigative reports for the Chino Airport also make clear: there is, at the very least, a possibility that the groundwater contamination arose from multiple sources and thus multiple occurrences. Indeed, ICSOP repeatedly noted that its "next steps" for the Chino Claim would include attempting to pursue others that had contributed to site conditions, indicating that ICSOP had a reasonable basis to believe that contamination had been caused by different operators and different operations at the site. ( Newman Decl., Ex. Y at PI000159.)

ICSOP's belief was well-founded given the CRWQCB's findings. The 1990 CAO, for example, made numerous findings supporting the possibility that the groundwater contamination had numerous causes because it likely resulted from the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

discharge of waste by different parties at different times in different ways and in different Airport locations. (Newman Decl., Ex. F at P1013689-92.) The CAO found that parts of the Airport had been leased to numerous tenants, whose disparate operations included flight training, aircraft storage and sales, manufacturing of napalm, bombs and incendiary devices, crop dusting, engine repair, aircraft painting, stripping and washing, a dispensing facility for fire retardants, and a U.S. Forest Service facility. ( Newman Decl., Ex. F at P1013689-92.) The CAO further noted that that the use of solvents by these various operators and operations had been "widespread and varied," and that contaminants had been "discharged in various ways – on-site landfills, industrial wastewater disposal systems, sewage disposal systems, and direct disposal to the ground." (*Id.*)

Based on a review of historical records and other sources, a 2013 Historical Site Assessment Report, submitted to the CRWQCB as part of the County's investigation, similarly identified 20 different Areas of Concern ("AOCs") on the Airport property where a release of contaminants had or may have occurred, including a wash rack area, two landfills, evaporation ponds, a fuel dump area, a paint shop, underground storage tanks located throughout the Airport, various buildings associated with aircraft maintenance and engine overhaul, and a sewage treatment plant. ( Newman Decl., Ex. O at SBC0000191-95.) Moreover, investigations revealed that there were two parallel groundwater plumes beneath the Airport, which contained different contaminants and which originated from different portions of the site. The primary contaminant of the west plume is TCE and extends from the wash rack in AOC G, in the northwest part of the site. The primary contaminant in the east plume is 1,2,3-TCP and appears to extend from the engine overhaul and maintenance buildings in Areas EE and GG, in the northern middle portion of the site. (*Id.*, Ex. Z at PIMG004770.)

The County provided ICSOP with this information ( Newman Decl., Ex. KK; Ex. H at 83:12-84:19, 87:19-88:18.), and ICSOP's internal documents reflect its awareness that there were two plumes and multiple sources of contamination. Just six

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

weeks after the County notified ICSOP of the claim in 2008, ICSOP's environmental consultant recognized that "many tenants" at the Chino Airport had "reportedly used chlorinated solvents" … "since the 1940s to the present, …" and that "[p]otential releases … likely occurred from" numerous sources, including "onsite landfills, industrial wastewater disposal systems, sewage disposal systems and from surface spills…." He also noted that although TCE was one contaminant at the site, other chemicals from historical operations at the site also were found in the groundwater. ( Newman Decl., Ex. R, PI013270-71; Ex. Q at 32:16-33:21, 35:15-36:11, 56:18-57:11; *see also* Newman Decl., Ex. T at PI012785-86.) In 2019, ICSOP's consultant also recognized that there were two groundwater plumes, with different contaminants and different point sources for each plume. ( Newman Decl., Ex. W at PI009941.)

ICSOP's external communications likewise reflect that there were multiple sources of groundwater contamination and thus the possibility of multiple occurrences. In July 2008, ICSOP acknowledged to the County that the Airport has been leased to "numerous entities" since 1948 and that "the lessees' operations have involved the intensive use of chlorinated and organic solvents and other hazardous chemicals and materials." ( Newman Decl., Ex. MM at PI012688.) In December 2009, ICSOP informed the County that it was "concerned" whether the damage was "caused by one or more 'occurrences'" noting that "numerous tenants have engaged in operations at the Airport since the 1940's…." ( Newman Decl., Ex. LL at PI012674.) Moreover, by 2018, ICSOP had reported to its reinsurers that two additional ICSOP policies were on "precautionary notice," even though such notice would have been unnecessary if the Chino Claim involved only a single occurrence triggering a single policy. (Newman Decl., Ex. Z at PIMG004769; Ex. D at 13:15-14:6, 15:23-16:10, 87:20-90:20.)

Most telling of all, however, are documents reflecting ICSOP's cost forecasts, which conclusively establish that ICSOP knew there was a possibility of multiple occurrences. By December 2016, a manager in the claims department had reported

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

just such a possibility, sending his superiors an email marked "High" importance that told them of a "contemplated reserve increase[]" for Chino of "approximately $36,000,000" based, in part, on a "newly identified potential additional occ[urrence]." ( Newman Decl., Ex. BB at PIDS000055, Ex. AA at 19:19-21:3, 22:19-23:17, 134:14-135:7; Ex. X at 13:4-13:22, 15:4-15:6, 16:10-21:9, 23:17-23:25, 25:2-27:3, 41:14-43:19; Ex. JJ at 19:2-20:2, 22:3-23:1.) Indeed, email after email discusses ICSOP increasing its cost forecast by multiples of the $9 million per-occurrence limit, even though such increases would be unnecessary absent the possibility of multiple occurrences. (*See, e.g.,* Newman Decl., Ex. CC at PIRK000277-78 [Emails reporting a "[c]urrent exposure estimate increase by $27M gross; total exposure approx. $36M"]; Ex. DD at PIRK000261-64) ["anticipated reserve increase" for Chino is "$27.0M"]; Ex. AA at 142:9-143:25.)

ICSOP's witnesses also consistently testified in their depositions that ICSOP was "still investigating" the number of occurrences ***as recently as last month*** and that it was "possible" that there was more than one occurrence. (Newman Decl., Ex. EE; Ex. D at 254:1-254:12 ["I'm still … trying to evaluate whether or not there is a second occurrence."]; Ex. S at 72:20-72:25, 183:21-184:7; 194:22-195:9; Ex. X at 40:6-40:15.) Just last week**,** ICSOP's own expert on environmental issues opined that "[o]nce the investigation of the remaining data gaps has concluded, a maximum of two releases may be possible." ( Newman Decl., Ex. EE, p. 39.)

### E. ICSOP Unilaterally Ceases Paying the County's Costs

Even though ICSOP understands that the Chino Airport may involve multiple occurrences, ICSOP refused to fund any additional costs incurred by the County once ICSOP had paid a single $9 million per-occurrence limit under its Policies. (Newman Decl., Ex. FF at PI012126; Ex. S at 24:11-25:20, 31:14-31:18, 44:15-44:19, 100:7-100:21.) The County promptly responded to this assertion and documented why the Chino Airport might involve more than one occurrence. (Newman Decl., Ex. GG at PIAE000067; Ex. S at 196:9-197:9.) Since that time, the County has continued to

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

submit invoices for, among other things, investigative activities at the Chino Airport, but ICSOP has refused to pay any additional costs. (Newman Decl., Ex. OO; Ex. H at 9:6-10:16, 36:6-8, 98:23:-99:18.)

### F. The County Files Suit and ICSOP Once Again Denies Coverage

On November 22, 2021, the County filed this lawsuit. Despite having already paid $9 million to the County, ICSOP engaged in the same baseless denials of coverage it had raised in the County's prior, state court coverage litigation, asserting as it had in that earlier action, that its Policies are "indemnity only" and provide no coverage until the claims against the County have been settled or adjudicated. (ECF No. 19 at 9:8-9, Twelfth Affirmative Defense). ICSOP also raised a host of other meritless defenses to coverage. (ECF No. 19 at 8:1-9:28.)

## III. LEGAL STANDARDS

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence … is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

"When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citation omitted). The burden then shifts to the non-movant to designate "specific facts showing a genuine dispute for trial." *Forkum v. Coop. Adjustment Bureau, Inc.*, 44 F. Supp. 3d 959, 961-62 (N.D. Cal. 2014). To meet this burden, "there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby, Inc.*, 477 U.S. at 252. ICSOP cannot meet its burden of coming forward with evidence here.

## IV. ARGUMENT

ICSOP's position that it does not have – and never had – an obligation to

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

reimburse the County's costs strains credulity. ICSOP already paid $9 million of such costs and never would have done so if it truly believed that it could deny coverage. Now, despite ICSOP's prior recognition of its coverage obligations, ICSOP seeks to deny them entirely or to have this Court bless its unilateral termination of coverage, even though California law prohibits such a result.

Under California law, the County's costs of investigation are considered defense costs, and ICSOP must pay such costs for any claim that is ***potentially*** covered by its Policies. Moreover, once an insurer's defense obligations are triggered, as they were here, the insurer must continue providing coverage until it proves that any potential for coverage has been eliminated and obtains a court order to that effect. Here, however, ICSOP terminated coverage, even though it recognized that a potential for coverage remained because of the possibility of multiple occurrences, and even though it had obtained no court order relieving it of its obligation.

ICSOP's attempts to avoid coverage on the basis of late notice are baseless. No matter the legal theory or policy provision on which ICSOP bases its late notice defense, ICSOP fails to meet its high burden of showing that it suffered actual, substantial prejudice and would have achieved a better outcome in the claims against the County had it received earlier notice. As importantly, under California law, where, as here, an insurer raises multiple grounds for avoiding coverage, only one of which is late notice, the insurer cannot rely on late notice to avoid coverage. The reality is that ICSOP knows it cannot sustain its late notice defense or else it would not have paid $9 million of the County's costs.

The other affirmative defenses that are the subject of this Motion also lack merit because ICSOP cannot summon any facts to support them. The County has not obtained coverage under other insurance policies for amounts it seeks from ICSOP, has not failed to mitigate its damages, has not violated the Loss Payable or Maintenance of Underlying Insurance clauses, and ICSOP can point to no "intervening" or "superseding" cause of the County's loss. For these reasons, the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Court should reject these affirmative defenses and grant summary judgment to the County on each of them.

**A. ICSOP Breached the Policies by Ceasing to Pay Costs in 2021**

**1. ICSOP Must Reimburse the County's Costs as they Are Incurred**

Although ICSOP asserts, as it did in prior coverage litigation, that its Policies are "indemnity only" and that it has no duty to pay the County's costs as they are incurred, ICSOP knows this is not true because its position already has been judicially rejected. (Newman Decl., Ex. V at PIRK000415) [ICSOP Report to its Reinsurers noting that "The court determined that ICSOP was required to reimburse defense costs as those costs were incurred."].) Moreover, the prior court ruling on this issue is on all fours with other precedent establishing that policies like those here require an insurer to pay costs as they are incurred, rather than await the outcome of the claims against the insured. *See, e.g., Gon v. First State Ins. Co.*, 871 F.2d 863, 868 (9th Cir. 1989); *Renovate Am., Inc. v. Lloyd's Syndicate 1458*, No. 3:19-cv-01456-GPC-WVG, 2019 U.S. Dist. LEXIS 212874, at *9-10 (S.D. Cal. Dec. 10, 2019).

ICSOP's Policies promise to pay "all sums" which the County becomes "obligated to pay … for damages … ***and*** expenses…." (Newman Decl., Ex. A at PI00059 [§ I Coverage].) (emphasis added). Moreover, they specify that the sums payable by ICSOP "shall also include … sums paid as … expenses for … lawyers … and investigators and other persons, and for … investigation of claims…." (*Id.*, Ex. A at PI00059 [Definition 6].) Multiple courts have recognized that nothing in such policy language permits the insurer to await the outcome of the claim against the insured before reimbursing the insured's costs. *See, e.g., Deere & Co. v. Allstate Ins. Co.*, 32 Cal. App. 5th 499, 520-21 (2019); *Cannon Elec., Inc. v. ACE Prop. & Cas. Ins. Co.*, No. BC290354, slip op at pp. 6-8 (Cal. Super. Ct. April 9, 2019) (following *Deere*) (Newman Decl., Ex. NN); *Carrier Corp. v. Allstate Ins. Co.*, No. 2005-EF-7032, 2020 N.Y. Misc. LEXIS 2593, at *5-6 (N.Y. Sup. Ct. May 20, 2020); *Cruz v. Cty. of Dupage*, No. 96 C 7170, 1998 U.S. Dist. LEXIS 18787, at *25-26 (N.D. Ill. Nov. 19,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1998); *Certain Underwriters at Lloyd's v. Chicago Bridge & Iron Co.*, 406 S.W.3d 326, 338 (Tex. App. 2013); *Dana Cos. v. Am. Employers' Ins. Co.*, No. 49D14-1012-PL-053501, 2013 Ind. Super. LEXIS 17, *19-26 (Ind. Super. Ct. May 6, 2013).

The Loss Payable clause in the Policies also makes clear that ICSOP's coverage obligations attach once the insured has incurred amounts in excess of the retention. The Loss Payable clause provides that "[l]iability with respect to any occurrence under this policy shall not attach unless and until the Assured … shall have paid the amount of the … [retention]…." (Newman Decl., Ex. A at PI00061 [Condition J].) Attachment of ICSOP's liability thus is pinned to the date on which the insured has satisfied its retention, not the date on which it has been rendered liable for the underlying claim against it. As importantly, the Loss Payable clause requires the insured to make a "definite claim" for any loss within 12 months after the County has paid amounts in excess of its retention ***or*** within 12 months after it has been held liable: "The Assured shall make a definite claim for loss after the Assured shall have paid an amount … in excess of the amount borne by the Assured ***or*** after the Assured's liability shall have been fixed … by final judgment … or by agreement…." (Newman Decl., Ex. A at PI00061 [Condition J].) (emphasis added). The disjunctive phrasing of this clause makes clear that amounts become payable (and, indeed, must be "claimed" by the insured) under the Policies after payment by the insured in excess of the retention and that the insurer's payment of costs thus need not await resolution of the claim against the insured. *Deere & Co.*, 32 Cal. App. 5th at 520-21; *Cannon Elec.*, slip op at pp. 6-8; *Dana Cos.*, 2013 Ind. Super. LEXIS at *19-26.

**2. ICSOP Must Pay Costs for Potentially Covered Claims**

Where, as here, a policy requires the insurer to pay the insured's costs before the claim against the insured is resolved, that duty extends to all potentially covered claims, absent policy language requiring a different result. *Acacia Research Corp. v. Nat'l Union Fire Ins. Co.*, No. CV 05-501 PSG (MLGx), 2008 U.S. Dist. LEXIS 96955, at *30 (C.D. Cal. Feb. 8, 2008) ("[T]he duty to advance defense costs is [as]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

broad as the duty to defend."); *Braden Partners, LP v. Twin City Fire Ins. Co.*, No. 14-cv-01689-JST, 2016 U.S. Dist. LEXIS 180958, at *27 (N.D. Cal. Dec. 20, 2016); *Olympic Club v. Those Interested Underwriters at Lloyd's London*, 991 F.2d 497, 502-03 (9th Cir. 1993).[1]

In *Braden Partners,* for example, the court noted that the insurer had to advance defense costs for ***potentially*** covered claims because the policy created separate duties to pay indemnity amounts and defense costs. No. 14-cv-01689-JST, 2016 U.S. Dist. LEXIS 180958, at *30 ("The policy's duty to advance defense costs … exists independently of the duty to indemnify, which … suggests that the actual coverage standard does not apply."). The Policies here are no different. In addition to covering amounts incurred via adjudication or compromise (*e.g.*, indemnity amounts), they also promise to pay "expenses … for investigators … and for … investigation of claims…." (Newman Decl., Ex. A at PI00059 [Definition 6].) Because there is no way to determine during the pendency of a claim whether the insurer will be held liable for indemnity amounts resulting from adjudication or settlement, it only makes sense that the "potential for coverage" standard would apply in determining ICSOP's obligation to pay pre-resolution costs.

Critically, a contrary result would require the insured to prove the claim against itself in order to obtain payment of defense costs for the very claim it is contesting. It also would frustrate the insured's expectations by delaying defense funding when it

---

[1] While the investigation and remediation expenses incurred by the County to comply with the CAOs are not technically "defense costs," the ICSOP Policies obligate ICSOP to reimburse the County for "expenses for . . . investigation of claims … paid as a consequence of any occurrence covered hereunder." The California Supreme Court has held that the language used in the ICSOP Policies obligates the insurer to reimburse its insured for "expenses incurred in responding to government agency orders administratively imposed outside the context of a … lawsuit" and includes expenses incurred by an insured in responding to government agency orders to cleanup and abate environmental pollution. *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal. 4th 377, 398 (2005).



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

needs that funding the most – during the pendency of the claim against it. *Braden Partners*, 2016 U.S. Dist. LEXIS 180958, at *34 ("the duty to advance defense costs would be illusory if the insured had to wait for a determination of actual coverage to obtain the necessary funding for its defense"). Indeed, the "entire purpose of the duty to advance defense costs is to ensure that a policyholder has the insurance proceeds available to defend against an underlying action." *Id*.

Applying the potential for coverage standard also makes sense here because the ICSOP Policies are umbrella policies and are specifically designed to "drop down" and act as primary coverage where, as here, the primary policies do not apply. *Am. States Ins. Co. v. Ins. Co. of the State of Pa.*, 800 F. App'x 452, 454 (9th Cir. 2020) ("When claims are covered by an umbrella insurance policy but not by the underlying primary insurance, the umbrella insurer must drop[] down to provide primary coverage.") (internal quotation marks and citation omitted). Here, because the Policies are intended to function like primary coverage in a drop-down situation like this one, it would make no sense for the Policies' defense coverage to be narrower than the primary coverage. Nor would it make sense to have the defense conditioned on the outcome of the underlying action and to require the insured to establish coverage before it can obtain defense benefits. Imposing such a requirement would hardly be consistent with the umbrella policy's underlying purpose of functioning as primary coverage in drop-down cases. *Sentry Select Ins. Co. v. Royal Ins. Co. of Am.*, 481 F.3d 1208, 1221 (9th Cir. 2007) ("The nature of this umbrella policy … suggests the parties intended to provide the same coverage as the underlying [] policy.") (citation omitted).

Having purchased "umbrella" coverage from ICSOP, rather than "excess" coverage, the County had a reasonable expectation that the ICSOP Policies would provide meaningful defense coverage where, as happened here, primary policies did not apply. *Legacy Vulcan Corp. v. Superior Court*, 185 Cal. App. 4th 677, 698, (2010) ("If, under the terms of the policy, the insured would have a reasonable expectation that the insurer would provide a defense, any limitation on the insurer's defense

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

obligation must be conspicuous, plain and clear."); *Ironshore Specialty Ins. Co. v. Crosby Estate At Rancho Santa Fe Master Ass'n*, No. 21-cv-1249-WQH-AHG, 2022 U.S. Dist. LEXIS 216293, at *14 (S.D. Cal. Nov. 30, 2022) (any limitation on insurer's obligation to fund defense must be "must be conspicuous, plain and clear."). The Policies here require reimbursement of costs based on the potential for coverage, and do not require the insured to await the outcome of the underlying claim against it before obtaining policy benefits. *See, e.g., Gon*, 871 F.2d at 868 (requiring insurer to reimburse insured's legal expenses as they are incurred).

### 3. The CAOs Are Covered Claims that Potentially Involve Multiple Occurrences

The Policies provide coverage for "ultimate net loss" in connection with "claims" on account of "property damage" arising out of an "occurrence." The CAOs issued to the County are "claims," and ICSOP has not contended otherwise. Likewise, there is no real dispute that the claims against the County are for "property damage" to property not owned by the County. *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 842-43 (1990) (environmental damage is "property damage"); *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1565 (9th Cir. 1991) (chemical release into groundwater "constitutes actual harm to property in which the state and federal governments have an ownership interest."). Moreover, given that releases at the site took place from at least the 1940s and that contaminants undoubtedly continued to migrate through soil and groundwater after their release, there can be no room for dispute that property damage potentially was ongoing during the periods of the ICSOP Policies.

Even if the undisputed facts here left some room for ICSOP to argue that the CAOs are not covered claims, ICSOP's course of performance regarding the Chino Claim erases any doubt on that score. *See* Cal. Code Civ. Proc. § 1856 (c) (allowing use of course of performance evidence to explain or supplement a contract). Here, if ICSOP did not believe the CAOs to be covered claims, it would not have paid $9



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

million to the County. ICSOP's course of performance is the "most reliable indicator" of the parties' intent as to how the ICSOP Policies should be interpreted in the context of claims, like the CAOs, that impose obligations on the County to investigate and remediate. ICSOP's payments to the County, over a period of several years, further supports the conclusion that the Policies provide coverage here. *Lennar Mare Island v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 964 (E.D. Cal. 2016).

There also can be no dispute that the groundwater contamination which is the subject of those claims potentially arose from multiple occurrences. In prior coverage litigation between the County and ICSOP, this Court established the standards for determining the number of occurrences under the same ICSOP Policies at issue here:

> The number of occurrences under the ICSOP Policies is determined in two steps. First, the Court must determine whether the contamination resulted from "events" or "continuous or repeated exposure" to "substantially the same general conditions." Second, if the contamination resulted from "continuous or repeated exposure" to "substantially the same general conditions," the Court must determine whether the contamination came from one "premises location" or multiple "premises locations."

*Ins. Co. of the State of Pa. v. Cty. of San Bernardino*, No. EDCV 16-0128 PSG (SSx), 2017 U.S. Dist. LEXIS 185541, at *14 (C.D. Cal. July 24, 2017).

In determining the number of premises locations for a site that involves contaminants that leaked from multiple containers, this Court noted that "courts have found two premises locations as a matter of law when there is some geographic separation between the containers and some way to tell that the containers each leaked their own fluids." *Id.* at *22-23. This Court further noted that in determining the number of premises locations at a site that involves multiple parcels, factors to be considered include "how much weight to give to the boundaries of [areas from which contaminants leaked] – whether marked or not, the different times that the parcels were purchased, how contaminants leaked from the parcels, and any differences in the types of contaminants deposited at the different sites." *Id.* at *25. This Court held that

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

where the facts are in dispute, the determination of the number of occurrences is a question of fact for the jury. *Id*. at *18-20. Indeed, the very existence of a factual dispute means there is a ***potential*** for multiple occurrences.

Applying these standards to the facts here clearly demonstrates a ***potential*** for multiple occurrences. There is no dispute that the Chino Airport was occupied by numerous tenants since 1940 and that these tenants performed different types of operations at different locations at the Airport, and that these operations used different chemicals, which were disposed of in a variety of ways, including direct disposal to the ground, disposal ponds, landfills, and sewer systems. The disposal ponds, landfills and sewer systems are equivalent to "containers" from which contaminants potentially leaked, and there is no dispute that these "containers" were in use at different times and at different portions of the site, as established by the 2013 Historical Site Assessment that identified 20 different Areas of Concern at the Airport. These AOCs involved different operations, chemicals and disposal methods over a period spanning more than 50 years. (Newman Decl., Ex. O at SBC0000191-95.) Likewise, the facts are undisputed that there are two parallel groundwater plumes under the Chino Airport which contain different contaminants and originate from different portions of the site. (*Id*., Ex. Z at PIMG004770.) These facts alone are sufficient to establish the ***possibility*** of multiple occurrences.

ICSOP admits the possibility of multiple occurrences here. By December 2016, ICSOP reported that there was a "contemplated reserve increase[]" for Chino of "approximately $36,000,000" and that this increase was based, in part, on a "newly identified potential additional occ[urrence]." (Newman Decl., Ex. BB, PIDS000055.) Other emails implicitly acknowledge this possibility as they discuss increasing ICSOP's cost forecast for Chino by multiples of the $9 million per-occurrence limit, even though such increases would have been unnecessary absent the possibility of multiple occurrences. (*See, e.g.*, Newman Decl., Ex. CC at PIRK000277-78 [Emails "RE: Reserve Movement $25M+" reporting that Chino Claim had a "[c]urrent

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

exposure estimate increase by $27M gross"]; Ex. DD, PIRK000261-64 [TAB 71]) (emails stating "the anticipated reserve increase" for Chino is "$27.0M").

ICSOP's witnesses freely admitted at deposition that it was possible that the Chino Claim involved multiple occurrences. (*See, e.g.*, Newman Decl., Ex. S at 183:21-184:7.) And ICSOP has designated an expert to testify in this case, who acknowledges that "[o]nce the investigation of the remaining data gaps has concluded, a maximum of two releases may be possible." (Newman Decl., Ex. EE, p. 39.)

Because the evidence here amply demonstrates that there is a ***potential*** for multiple occurrences, ICSOP should not have ceased paying the County's costs. As the California Supreme Court has held, "[t]he defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded … or until it has been shown that there is *no* potential for coverage…." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 296 (1993). *See also Liberty Mut. Ins. Co. v. Superior Court*, 58 Cal. App. 4th 617, 623 (1997) ("An insurer's duty to defend continues … so long as the possibility of duty to indemnify remains alive."). Here, the fact that ICSOP's own documents and witnesses are in agreement that there is a potential for multiple occurrences means that ICSOP cannot demonstrate the absence of any potential for coverage. ICSOP thus continues to have defense obligations to the County and by unilaterally ceasing its reimbursements pursuant to those obligations, ICSOP breached the Policies.

Where, as here, an insurer has recognized its defense obligations, it cannot unilaterally withdraw defense coverage on the basis that its per-occurrence limits have been exhausted, absent a court order allowing it to do so. In *Hartford Accident & Indem. Co. v. Superior Court*, 23 Cal. App. 4th 1774 (1994), for example, an insurer defended its insureds against dioxin litigation for several years, and then sought to unilaterally withdraw its defense, claiming that the per-occurrence limits for its policies had been exhausted. The court, however, held that the insurer was not entitled to withdraw its defense in the absence of a court order permitting it do so:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

> Hartford could not unilaterally terminate a defense for which it potentially is responsible. *When a dispute arises over exhaustion of policy limits, a primary insurer must defend until it obtains a declaratory judgment or summary judgment that it has exhausted its policy limits.*

*Id.* at 1781 (emphasis added).

*Montrose* and its progeny, including *Hartford*, demonstrate that California law is extremely protective of an insured's rights to defense coverage and carefully limits an insurer's rights to withdraw such coverage to prevent the insured from being left in the lurch in the middle of a claim against it. The duty to defend therefore "continues … unless the insurer … ***proves*** … that the potential for coverage … no longer exists" and "[t]he insurer must absorb all costs [incurred] … before the insurer establish[s] that the duty had ended." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 657 (2005) (emphasis added). Moreover, California law places the burden squarely on the insurer to prove that the number of occurrences is a defense to coverage. *Liberty Mut. Fire Ins. Co. v. Bosa Dev. Cal. II, Inc.*, No. 17-cv-0666-AJB-BGS, 2020 U.S. Dist. LEXIS 65243, *13 (S.D. Cal. Apr. 9, 2020) (where insurer seeks to invoke the number of occurrences issue as a limitation on coverage, "it is ***the insurer*** who bears the burden of persuasion on the issue of the number of occurrences.") (emphasis in original) (collecting cases).

The implications of California law for the situation here could not be clearer. It was incumbent on ICSOP to ***prove*** that the potential for coverage has been extinguished and to obtain a court order to that effect before withdrawing coverage. Here, however, ICSOP has done no such thing. To the contrary, in the face of its own recognition of the potential for multiple occurrences, ICSOP played judge and jury and unilaterally terminated coverage to the County based on its view that there was a "single occurrence." In doing so, ICSOP breached its policies.

### B. ICSOP Cannot Establish Its "Late Notice" Defenses

ICSOP's Third, Fourth, Fifth, Sixth, Ninth and Tenth Affirmative Defenses all

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

assert that ICSOP is entitled to avoid coverage on the basis of late notice, citing a "kitchen sink" hodgepodge of different legal theories and policy provisions in support of this defense. ICSOP, however, cannot establish a late notice defense under any theory or policy provision here. Rather, because ICSOP cannot establish that it was substantially prejudiced, because it would have denied coverage in any event, and because its payment of $9 million to the County establishes that even ICSOP does not take its "late notice" defense seriously, ICSOP cannot support these defenses and the Court should grant summary judgment to the County on each of them.

**1. ICSOP Cannot Establish its Ninth Affirmative Defense (Notice)**

ICSOP's Ninth Affirmative Defense asserts that "[t]he County's claims are barred to the extent that the County failed to provide proper notice of the … Chino Claim." (ECF No. 19 at 8:28-9:1.) When asked during discovery to support this defense, however, ICSOP failed to present any facts. As the Ninth Circuit has noted, California law places a "heavy burden" on an insurer seeking to establish a late notice defense. *Ins. Co. of the State of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 524 (9th Cir. 1990). Under California law, to avoid coverage for late notice, the insurer must prove that it suffered actual and substantial prejudice. *Id.* Moreover, not any form of "prejudice" will do. Rather, the insurer must prove that late notice prevented the insurer from achieving a better result for the insured in the underlying claim:

> [P]rejudice is not established merely because the late notice prevented the insurer from contemporaneously investigating the claim, nor does it arise from the mere denial of the opportunity to make an early settlement of the claim…. [U]nder California case law, the only prejudice sufficient to allow an insurer to avoid liability based on late notice is … where the insurer actually demonstrated that there was a substantial likelihood that it could have either defeated the underlying claim against its insured, or settled the case for a smaller sum than that for which its insured ultimately settled the claim.

*Ins. Co. of the State of Pa.*, 922 F.2d at 524 (internal citations omitted).

Here, ICSOP has not even attempted to show that it could have defeated the

claims against the County or resolved them for less money had it received earlier notice. Instead, when asked to state all facts that support its late notice defense via interrogatory, ICSOP merely recited the date that the CRWQCB issued its first CAO and the date that the County notified ICSOP of the CAO:

> The … [CRWQCB] originally required the County to investigate and remediate … on or about October 31, 1990. However, the County first notified ICSOP of the matter on March 25, 2008.

(Newman Decl., Ex. HH at 18:18-28.) This response is plainly insufficient to establish any form of prejudice, let alone the actual and substantial prejudice that California law requires. At deposition, ICSOP's corporate designee also was unable to identify any actual prejudice, and instead merely speculated about "opportunities" that may have been lost to ICSOP. (Newman Decl., Ex. S at 115:3 to 116:11.) Under California law, such speculation and the "mere possibility" of prejudice are insufficient as a matter of law. *Ins. Co. of the State of Pa.* 922 F.2d at 524; *Shell Oil Co. v. Winterthur Swiss Ins. Co.,* 12 Cal. App. 4th 715, 761 (1993); *Nw. Title Sec. Co. v. Flack*, 6 Cal. App. 3d 134, 140-41 (1970).

California law also recognizes that ICSOP cannot establish a late notice defense here because it denied that there is coverage for the Chino Claim, without regard to the timing of notice. As the court noted in *Shell Oil Co*, "[t]he law is established that where an insurance company denies liability …, it waives any claim that the notice provisions … have not been complied with." 12 Cal. App. 4th at 762 (internal quotation marks omitted). The rationale for this rule is simple and entirely sensible: "[i]f the insurer asserts that the underlying claim is not … covered …, then earlier notice would only result in earlier denial of coverage." *Id.* at 763. Here, as demonstrated by the bevy of affirmative defenses it has asserted, ICSOP has made clear it believes that its Policies do not provide coverage, regardless of when notice was given. (*See, e.g.,* Newman Decl., Ex. HH at 16-17, 19-20). California law thus mandates rejecting ICSOP's "late notice" defense on this basis, too.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**2. ICSOP Cannot Establish its Other "Late Notice" Defenses**

ICSOP's Third, Fourth, Fifth, Sixth and Tenth Affirmative Defenses – based on laches, waiver, estoppel, unclean hands, and the Assistance and Cooperation clause, respectively – fail for the same reasons as the Ninth Affirmative Defense because they are based on the same deficient assertions. When asked to support these defenses via interrogatory, ICSOP merely "cut and pasted" the same bare-bones facts that it stated in support of its Ninth Affirmative Defense. (Newman Decl., Ex. HH at 17, 19.) Moreover, when given the opportunity to provide further facts, ICSOP's corporate designee failed to do so and merely pointed to ICSOP's insufficient interrogatory response. (Newman Decl., Ex. S at 264:18-266:2*; see also id.* at 266:6-267:2 [similar testimony as to Tenth Affirmative Defense].) Having failed to offer any facts establishing substantial prejudice, ICSOP's Third, Fourth, Fifth, Sixth and Tenth Affirmative Defenses fail as a matter of law.

Moreover, a number of these defenses suffer from other infirmities. Laches, for example, is an equitable defense that applies only to claims that sound in equity. *Cadence Design Sys. v. Syntronic AB*, No. 21-cv-03610-SI, 2022 U.S. Dist. LEXIS 80494, at *8 (N.D. Cal. May 3, 2022). Laches thus is not an appropriate defense to the County's breach of contract and bad faith claims. ICSOP's attempt to rely on waiver is even more suspect because waiver requires proof by "clear and convincing evidence," and ICSOP cannot even establish its defense under a preponderance of the evidence standard. *Kelly v. William Morrow & Co.*, 186 Cal. App. 3d 1625, 1635 (1986). And although ICSOP tries to make out an "unclean hands" defense, that defense requires ICSOP to show that the County's conduct was unconscionable, in bad faith or inequitable, and ICSOP has not adduced any facts to show such conduct here. *Aubin Indus. v. Caster Concepts, Inc.*, No. 2:14-cv-02082-MCE-CKD, 2015 U.S. Dist. LEXIS 82881, at *13-14 (E.D. Cal. June 23, 2015). At bottom, ICSOP's attempt to force the square peg of "late notice" into the round holes of "laches," "waiver," and "unclean hands" is just a desperate attempt by ICSOP to somehow

justify boilerplate affirmative defenses that never should have been asserted in the first place. This Court should grant summary judgment to the County on ICSOP's Third, Fourth, Fifth, Sixth and Tenth Affirmative Defenses.

### C. ICSOP Cannot Establish Its 11th, 12th, 13th, 14th, or 15th Affirmative Defenses

ICSOP's 11th Affirmative Defense is based on the definition of "ultimate net loss" and the Other Insurance clause, both of which exclude coverage for loss for which other insurance is available to the County. (Newman Decl., Ex. A at PI00059.) ICSOP, however, has adduced no facts that would support this defense because ICSOP has not shown that other insurance is available to the County. To the contrary, the evidence shows that ICSOP knows full well that the County's other coverage is ***not*** available, and that is precisely why ICSOP, instead, provided coverage up to $9 million. (Newman Decl., Ex. V at PIRK000414 ["There is no available primary coverage…. The umbrella language, conversely, has been construed to cover costs incurred in responding to administrative claims"]); Ex. V at PIRK000415 ["ICSOP is obligated to drop down due to the absence of any suits that would implicate the primary…."].) ICSOP's Eleventh Affirmative Defense finds no support in the facts, and the Court should grant summary judgment to the County on that defense.

ICSOP's 12th Affirmative Defense also lacks support. That defense is based on the Policies' Loss Payable clause and ICSOP's assertion that this clause bars payment because there is no final judgment or any agreed compromise resolving the claims against the County. (Newman Decl., Ex. HH at 19-20.) As discussed above, however, nothing in the Loss Payable clause conditions ICSOP's obligations on existence of a final judgment or compromise. To the contrary, the "final judgment or compromise" language imposes timing requirements on the ***insureds' obligations*** to file a claim, and says nothing at all about when ICSOP's obligations are triggered: "The Assured shall make a definite claim for any loss … within twelve (12) months after the Assured shall have paid an amount … in excess of the amount borne by the Assured

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

or after the Assured's liability shall have been fixed and rendered certain either by final judgment … or by written agreement." (Newman Decl., Ex. A at PI00061.) Because the language of the Policies does not support ICSOP's 12th Affirmative Defense, it is deficient as a matter of law, and summary judgment should be granted in the County's favor on that defense.

ICSOP's 13th Affirmative Defense, which asserts that the County failed to mitigate damages, is also factually devoid. When asked to support this defense, ICSOP claimed that it raised the defense because some of the County's costs "may" have been unreasonable or unnecessary, and that it was "premature" to ask ICSOP to support this defense because it would be "the subject of expert review and testimony." (Newman Decl., Ex. HH at 20.) ICSOP, however, has not designated an expert on this topic, and thus by its own admission, it cannot support this defense. (Newman Decl., Ex. EE.) Summary judgment should be granted.

ICSOP's 14th Affirmative Defense is based on the Maintenance of Underlying Insurance clause and should never have been asserted because ICSOP admits that "ICSOP does not … have sufficient information to determine" if underlying insurance was maintained by the County, and thus it has no facts to support this defense. (Newman Decl., Ex. HH at 20.) Moreover, the clause at issue, even if violated (and it was not), does not absolve ICSOP from liability, but merely provides that ICSOP is only liable to the same extent as if underlying insurance had been maintained. As discussed above, however, ICSOP knows that there is no underlying insurance available here, as that is the very reason that ICSOP has dropped down to provide coverage. (*See* Newman Decl., Ex. V at PIRK000414-15.) The County thus is entitled to summary judgment on ICSOP's 14th Affirmative Defense.

ICSOP's 15th Affirmative Defense asserts that the County's loss was caused by an intervening or superseding cause, as opposed to ICSOP's conduct. (ECF No. 19 at 9:18-22.) But the only "facts" that ICSOP has cited in support of this defense are (1) the County purportedly "has not provided information to ICSOP to establish more

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

than one occurrence" and (2) "the exact nature of all the damages alleged by the County has not yet been determined." Newman Decl., Ex. HH at 20-21.) The County, however, has no obligation to re-supply ICSOP with multiple occurrence facts of which it is already aware, and ICSOP nowhere explains how "the exact nature" of damages somehow could give rise to a superseding or intervening cause that would excuse ICSOP's contractual breaches or its breaches of the duties of good faith and fair dealing. For these reasons, the County should be granted summary judgment in its favor on ICSOP's 15th Affirmative Defense.

## V. CONCLUSION

For all of the foregoing reasons, the County is entitled to summary judgment that ICSOP has breached the Policies and to summary judgment in its favor on ICSOP's 3rd, 4th, 5th, 6th, 9th, 10th, 11th, 12th, 13th, 14th, and 15th Affirmative Defenses.

DATED: February 15, 2023 REED SMITH LLP

By: */s/ Anthony S. Newman*
Anthony S. Newman
Attorneys for Plaintiff
San Bernardino County

REED SMITH LLP
A limited liability partnership formed in the State of Delaware