UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Kelly Davis | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** Order GRANTING ICSOP's motion *in limine* No. 7 [Dkt. # 168].

Before the Court is Defendant The Insurance Company of the State of Pennsylvania's ("ICSOP") motion *in limine* No. 7 to preclude questioning, evidence, argument, or jury instructions concerning future policy benefits for Plaintiff San Bernardino County's ("the County"), *see generally* Dkt. # 168 ("*MIL 7*"). The County opposed. *See* Dkt. # 210 ("*MIL 7 Opp.*"). ICSOP replied, *see* Dkt. # 254 ("*MIL 7 Reply*"), the County filed a sur-reply, *see* Dkt. # 259-2 ("*MIL 7 Sur-Reply*"), and ICSOP responded to the County's sur-reply, *see Dkt.* # 268 ("*MIL 7 Response to Sur-Reply*"). The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving, opposing, and reply papers, the Court **GRANTS** ICSOP's motion *in limine* No. 7.

I.   Factual Background

This case is about a dispute between the County and ICSOP over insurance coverage for groundwater contamination at the Chino Airport. *See* Dkt. # 123 ("*Sum. J. Order*"), 2. In 1990, the California Regional Water Quality Control Board, Santa Ana Region issued a Cleanup and Abatement Order directing the County to take certain actions with respect to groundwater contamination allegedly emanating from the Chino Airport. *Id.* Since the 1990 abatement order, the Control Board has issued two more abatement orders—one in 2008 and another in 2017—that directed the County to take further actions. *Id.* 3.

From July 23, 1966, to July 23, 1975, the County was insured by ICSOP under three umbrella liability insurance policies, each of which had a three-year policy term. *Id.* Under the policies, ICSOP agreed, subject to limitations, to "indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability" that is imposed by law or assumed under contract or agreement for damages and expenses "caused by or arising out of each occurrence." *Id.* The polices define "Occurrence" as "an accident or a happening or event or a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period." *Id.* 4. And "[a]ll such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence." *Id.*

Each of the policies also provides a $9 million per occurrence limit of liability. *Id.* 3. And, at the summary judgment stage, the Court found that each of the ICSOP policies includes an annual aggregate limit of liability of $9 million. *Id.* 3, 14–16. As each ISCOP policy had a three-year term, the aggregate limit of liability set a coverage limit of $27 million for each policy.

The County asserts that there are eighteen separate occurrences that caused the groundwater contamination and seeks reimbursement under the policies. *See id.* 12. The County asks for $13,993,556 in damages based on Chino Airport-related groundwater investigation and remediation expenses that had been submitted by the County to ICSOP but have not yet been paid ("unreimbursed expenses"). *Declaration of Anthony Newman*, Dkt. # 210-1 ("*Newman Decl.*"), ¶ 10, Ex. F, *Supplemental Expert Report of Jeffrey Kinrich*, Dkt. # 210-7 ("*Kinrich Supp. Report*), ¶¶ 1–2. In addition, the County seeks $37,119,196 in damages for future benefits under ICSOP's insurance policies for Chino Airport-related investigation and remediation expenses that the County expects to incur in the future ("future policy benefits"). *Id.* ¶¶ 4–6. At bottom, the County seeks to be awarded damages for the maximum amount of coverage it contends remains under the policies. At issue in this motion *in limine* are the future policy benefits that the County is seeking at trial.

II.   Legal Standard

A motion *in limine* is "a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). A party may also file a motion *in limine* to admit evidence. *See United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991). A court has the power to grant such motions pursuant to its "inherent authority to manage trials," even though such rulings are not explicitly authorized by the Federal Rules of Evidence. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Regardless of a court's initial decision on a motion *in limine*, however, it may revisit the issue at trial. *Id.* at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Federal Rule of Civil Procedure ("FRCP") 26 (a)(1)(A) requires a plaintiff to make certain initial disclosures to the defendant "without awaiting a discovery request." Under FRCP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

26(a)(1)(A)(ii), the plaintiff must provide "a copy—or a description by category and location—of all documents . . . that the [plaintiff] has in its possession, custody, or control and may use to support its claims." And FRCP 26(a)(1)(A)(iii) requires that the plaintiff provide "a computation of each category of damages claimed" and must "make available for inspection and copying as under [FRCP] 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." The advisory committee note to FRCP 26 describes this last requirement as "the functional equivalent of a standing Request for Production under [FRCP] 34." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendments (explaining that, "[a] party claiming damages or other monetary relief must . . . make available the supporting documents for inspection and copying as if a request for such materials had been made under Rule 34").

Relatedly, FRCP 26(e) requires that "[a] party who has made a disclosure under [FRCP] 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Under FRCP 37, when "a party fails to provide information or identify a witness as required by FRCP 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1); *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (Rule 37(c)(1) forbids "the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed"). This is typically a self-executing, automatic sanction, unless the party failing to disclose the information can show either a "substantial justification" for the failure or that the failure was harmless. *See Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008); Fed. R. Civ. P. 37(c)(1) advisory committee notes (1993) ("The revision provides a self-executing sanction for failure to make a disclosure required by Rule 26(a) . . . ."); *Yeti by Molly Ltd.*, 259 F.3d at 1106–07.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

III.   Discussion

The County seeks future policy benefits as damages for its claim of breach of the implied covenant of good faith and fair dealing. *See MIL 7 Opp.* 1:2–10; *see also* Dkt. # 5 ("*Compl.*"), ¶¶ 49–56. ICSOP moves to preclude the County from questioning or offering evidence, argument, or jury instructions relating to the County's claim for future policy benefits, arguing that the County's future policy benefits claim is untimely, barred as a judicial admission, and is not relevant and unduly prejudicial. *MIL 7* 1:1–13. The Court will address each of ICSOP's arguments in turn.

   A.   Timely Disclosure

In March 2022, the Court issued a scheduling order setting discovery cutoff dates. *See generally* Dkts. # 25, 26. The Court set the fact discovery deadline for February 1, 2023. Dkt. # 25. On March 8, 2023, the Court extended the expert discovery deadline to May 5, 2023, for non-claims handling experts and to May 26, 2023 for Stephen D. Prater and Paul C. Thomson III. *See generally* Dkts. # 80, 84.

ICSOP argues that the County's future policy claim is untimely because the County "failed to identify future policy benefits as damages attributable to any alleged breach of the implied covenant in its initial disclosures or produce evidence supporting such a claim during the discovery period." *MIL 7* 9:3–13. Further, it argues that "the County failed to designate an expert on the amount or reasonableness of the investigation and remediation expenses it seeks to recover as future policy benefits despite having designated Mr. Kinrich and Dr. Arulanantham as damage experts." *Id.* 9:4–9.

In its initial disclosures served in March 2022, the County stated it sought the following damages arising from its claims for breach of contract and breach of the implied covenant of good faith and fair dealing:

> Future economic losses and damages that will be incurred by the County to comply with and avoid and/or minimize the County's liability in connection with the CAOs and related governmental orders, and to remediate the groundwater contamination alleged therein.
>
> Damages resulting from ICSOP's breach of the implied covenant of good faith and fair dealing, including attorneys' fees recoverable pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

*Declaration of Nicholas B. Salerno*, Dkt. # 168-1 ("*Salerno Decl.*"), ¶ 2, Ex. 1, *County's Initial Disclosures*, Dkt. # 168-2 ("*County's Initial Disclosures*"), 3:27–4:10.

As a category of documents that it may use to support its claims and defenses, the County identified "[a]ny documents produced or identified by any third parties in discovery or in response to any subpoena or request for information." *County's Initial Disclosures* 3:21–22.[1]

In August 2023, after the close of discovery, the County amended its initial disclosures, specifying that it sought "[d]amages resulting from ICSOP's breach of the implied covenant of good faith and fair dealing, including attorneys' fees recoverable pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985) **and future policy benefits recoverable pursuant to *Egan v. Mutual of Omaha*, 24 Cal. 3d 809 (1979)**." *Salerno Decl.*, ¶ 3, Ex. 2, *County's First Amended Initial Disclosure*, Dkt. # 168-3 ("*County's First. Amd. Initial Disclosures*"), 4:14–16 (emphasis added). According to ICSOP, this amendment was the first time that the County indicated it was "seeking damages for future policy benefits for costs that the County had not yet actually paid based on an alleged breach of the implied covenant cause of action." *Salerno Decl.* ¶ 3.

While unclear, the County did provide notice of a potential claim for future policy benefits. The County's initial disclosures contemplated future economic losses and other damages arising from the County's breach of the implied covenant of good faith and fair dealing claim, which necessarily encompass a claim for future policy benefits.

At issue, however, is whether the County complied with the other requirements of FRCP 26, specifically, whether it complied with FRCP 26(a)(1)(A)(iii), which requires disclosure of "a computation of each category of damages claimed by the disclosing party."

The County claims that the documents that support the County's future policy benefits claim are the spreadsheets prepared and produced by the County's environmental consultant, Tetra Tech, Inc. ("Tetra Tech"). *Newman Decl.* ¶¶ 3–4. These documents, which are referred to as "spend plans," contain Tetra Tech's projections of the anticipated expenses that the County will incur over the next thirty to fifty years to investigate and remediate the groundwater

---

[1] The County also points to its disclosure indicating that it will rely on "[d]ocuments evidencing the amounts *spent* by the County to comply with the COAs and investigate, monitor, cleanup, and/or abate the alleged groundwater contamination asserted therein." *MIL 7 Opp.* 9:3–7 (citing *County's Initial Disclosures* 3:14–16) (emphasis added). But the County referred to documents of expenses spent in the past tense, and therefore cannot rely on this disclosure as notice of future economic losses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

contamination at the Chino Airport. *Id.* ¶ 3. In response to a subpoena served by ICSOP, Tetra Tech produced numerous spend plan spreadsheets in December 2022. *Id.* ¶ 4, *see also id.*, Ex. B, Dkt. # 210-3; *id.*, Ex. C, Dkt. # 210-4. The spreadsheets are single page documents, identified by the title "Chino Airport Plume Remediation Project," that include descriptions and estimations of the anticipated expenses. *See id.* In September 2023, following the close of fact discovery, the County produced an updated spend plan, that includes Tetra Tech's updated projections regarding the expected Chino Airport-related investigation and remediation expenses as of August 30, 2023. *Newman Decl.* ¶ 6.; *Salerno Decl.* ¶ 4; *see also id.*, Ex. 3, Dkt. # 168-4.

On October 3, 2023, months after the close of expert discovery, the County also served a supplemental expert report of Jeffrey Kinrich. *Newman Decl.* ¶ 10. In the report, Mr. Kinrich both supplements his initial report, where he opines on the total damages based on unreimbursed expenses for the Chino Airport-related groundwater investigation and remediation as of February 8, 2023, and provides a present value calculation of the County's claim for future policy benefits. *Kinrich Supp. Report* ¶¶ 1–3. Mr. Kinrich explains that he had been provided a spend plan of the expected future investigation and remediation expenses associated with the groundwater contamination at the Chino Airport prepared by Tetra Tech and, as of August 30, 2023, Tetra Tech projects over $88 million in future investigation and remediation expenses through 2073. *Id.* Counsel informed Mr. Kinrich, however, that $54 million remained available under the policies. *Id.* ¶ 5. Mr. Kinrich subtracts his calculation of the County's reimbursed expenses—$13,993,556—from the $54 million to arrive at $40,006,444 in available coverage. *Id.* As he estimates that that the projected costs will reach the policy limit in 2025, he then calculates the net present value of the available coverage and opines that the damages for the future policy benefits are $37,119,196. *Id.* ¶ 6.

ICSOP argues that this evidence is improper because none of the Tetra Tech spreadsheets were produced by the County or identified as documents that the County may rely on to support a claim for future policy benefits in any disclosure. *Salerno Decl.* ¶ 9. Accordingly, "[t]he County's Rule 26(a) disclosure obligations are not satisfied by unspecified documents obtained by ICSOP via subpoena to non-parties. The failure of the County to satisfy its affirmative obligation to disclose the amount and nature of any future damage claim or designate any witness on the topic unfairly denied ICSOP the ability to address the claim during the course of discovery." *MIL 7* 10:21–26. Further, ICSOP argues that Mr. Kinrich's new opinions related to the belated future damages claim are untimely and subject to automatic sanction. *MIL 7 Reply* 12:21–23.

The County, on the other hand, argues ICSOP is to blame for not inquiring about the spend plans. *See MIL 7 Opp.* 10:10–11:25. It points out that ICSOP received the spend plans in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

December 2022 through its subpoena to Tetra Tech. *Id.* 9:15–19. According to the County, this allowed ICSOP ample opportunities to inquire about the spend plans. *Id.* 10:10–11:7. For example, the County points out that ICSOP received the plans in January 2023 before the deposition of Tetra Tech's lead consultant on the Chino project, Benjamin Weink, who was disclosed as a person with information concerning "potential remedial plans to cleanup and/or abate the contamination."[2] *Id.* 10:10–21. And, ICSOP received a spend plan produced by Tetra Tech through its subpoena to of one of the County's experts, Anton Raviraj Arulanantham, Ph.D. *Id.* 10:22–11:7. The County argues that ICSOP could have later asked Dr. Arulanantham about the spend plan, but also did not. *Id.*

In addition, while conceding that the updated spend plan provided to ICSOP in September 2023 and Mr. Kinrich's supplemental report served in October 2023 were untimely, the County argues the untimeliness with respect these documents is substantially justified and/or harmless. *Id.* 12:11–16.

The Court finds the County's arguments unpersuasive. The County seeks both unreimbursed expense damages of $13,993,556 and future policy benefits of $40,006,444. *Kinrich Supp. Report* ¶¶ 2, 5. Given that the future policy benefits are the majority of the damages sought in this action, it is surprising that the County did not provide a computation of its future policy benefits claim during discovery, particularly given the County's position that the future policy benefits were the "future economic losses" contemplated by the County in its initial disclosures served in March 2022. Instead, the County broadly referred to future economic loss damages associated with its breach of the implied covenant of good faith and fair dealing claim but did not itself produce a supporting document until September 2023 or provide a computation for the future economic damages until October 2023. The County cannot comply with its obligations under FRCP 26 by merely listing the type of damages it intends to seek. *Hakim v. Murano, Inc.*, No. CV 15-05633 JVS (PLAx), 2017 WL 11632290, at *4 (C.D. Cal. Mar. 6, 2017), on reconsideration in part, No. CV 15-05633 JVS (PLAx), 2017 WL 11632278 (C.D. Cal. May 2, 2017) ("A list of categories of damages is no substitute [for computation] because a mere list fails to provide the opposing fair notice of the damages claimed.").

According to the County, ICSOP should have understood from Tetra Tech's production that the spend plans would be used to substantiate its claims for future policy benefits. But that misstates the obligation placed on the County by FRCP 26. Without an explanation of how the spend plans would be used to support the County's damages claim, it is unclear how ICSOP

---

[2] The County also designated Mr. Weink as a percipient expert and granted ICSOP an additional deposition in May 2023, where ICSOP did not introduce the spend plans.

Case 5:21-cv-01978-PSG-AS   Document 274   Filed 02/14/24   Page 8 of 18   Page ID #:12207

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

could have understood the damages it sought. For instance, the spend plans do not appear to disclose the cost of remediation and investigation attributable to each occurrence the County seeks damages. Further, each policy had an aggregate limit of coverage available. As shown by Mr. Kinrich, to compute the damages for the future policy benefits, the County had to determine what expenses had been incurred, what had been paid, and what coverage remained available.

"By its very terms Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; it requires a computation, supported by documents." *Frontline Med. Assocs., Inc. v. Coventry Health Care*, 263 F.R.D. 567, 569 (C.D. Cal. 2009) (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir.2006)) (cleaned up). The County failed to offer any computation of future policy benefit damages based on the spend plans to ICSOP before the close of fact discovery. Even if ICSOP had been informed of "the future costs that the County will have to shoulder as a result of the groundwater contamination," *MIL 7 Opp.* 11:16–18, the County had an obligation to show how the future costs fit into its claim for damages.

While the County may not have had all the information necessary to provide a computation of damages at the time of its initial disclosures, the County had access to Tetra Tech's production in December 2022. It had a duty to supplement its damages computation. *See* FRCP 26(e)(1)(A). Given the timing of Tetra Tech's production, the County certainly could have included a preliminary calculation of the future policy benefit damages in Mr. Kinrich's initial expert report served in February 2023. *See Salerno Decl.* ¶ 11. Further, regardless of whether ICSOP obtained the spend plans via third-party subpoena, the County could have indicated that it was relying on the documents to support its future benefits claim by producing the documents itself, like it did in September 2023. *Cf. Uni-Splendor Corp. v. Remington Designs, LLC*, No. CV 16-9316 PA (SSx), 2017 WL 10581102, at *2 (C.D. Cal. Sept. 5, 2017) ("It is beyond serious dispute that a party seeking damages has an obligation to produce financial data during discovery to support its damages calculation.").

FRCP 26(a)'s purpose is "to accelerate the exchange of basic information that is needed in most cases to prepare for trial or make an informed decision about settlement. *Ketab Corp. v. Mesriani L. Grp.*, No. CV 14-07241-RSWL-MRWx, 2016 WL 5921767, at *2 (C.D. Cal. Mar. 18, 2016) (citing *City and Cnty. Of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003)) (cleaned up). By never providing a calculation of its future policy benefits, the County frustrated that purpose and prevented ICSOP from understanding the contours of its damages claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

Lastly, the County's argument that ICSOP failed to conduct discovery on the spend plans is not persuasive. Under the County's logic, ICSOP should have figured out from a third-party production the damages sought by the County. The Court will not endorse the County's view that it was permitted to hide the ball as to its damages' claims. ICSOP's "failure to conduct discovery on the issue of damages does not absolve [the County] of its discovery obligations and render [the County's] failure to disclose damages computations to be substantially justified or harmless." *Ketab Corp.*, 2016 WL 5921767 at *3.

The County also fails to provide other reasons for how its untimely disclosures were substantially justified and harmless. The County argues that the updated spend plan "is merely an update of costs based on Tetra Tech's current analysis," and, since the future projected expenses increased only slightly since the spend plans produced in December 2022, it makes minimal difference as to the analysis. *MIL 7 Opp.* 12:17–26. But this argument does not negate the fact that the County failed to provide a computation of future policy damages or even produce the documents, which would have put ICSOP on notice and allowed them to conduct discovery. In addition, the County argues that Mr. Kinrich's supplemental report is harmless because "the present value calculation of future policy benefits reduces the projected value of those benefits by several million dollars." *Id.* 13:15–16. The County's argument is not persuasive. Mr. Kinrich is calculating the current value of the future payments it seeks under the remaining coverage of the policies, which should be the equivalent of what the County claims it would receive in reimbursements in later years.

Indeed, the County's late disclosed damages claim for nearly an additional $40 million from ICSOP is affirmatively not harmless as the Court would need to reopen discovery to allow ICSOP to prepare a defense to the County's claim for future policy benefits. *See Hoffman*, 541 F.3d at 1180 (finding that "[l]ater disclosure of damages would have mostly likely required the court to create a new briefing schedule and perhaps re-open discovery," and "[s]uch modifications to the court's and the parties' schedules supports a finding that the failure to disclose was not harmless.").

In sum, the County has not met its burden in proving that its failure to disclose the required information was substantially justified or is harmless. Accordingly, the Court finds that the County has failed to comply with FRCP 26, its evidence supporting its future policy benefits claim is untimely, and its failure to comply was not substantially justified or harmless.[3] The

---

[3] The County can still seek punitive damages and its *Brandt* fees arising from its claim of breach of the implied covenant of good faith and fair dealing. Because the sanction does not amount to dismissal of a claim, the Court does not need to consider whether the County's noncompliance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

Court thus **GRANTS** ICSOP's motion *in limine* No. 7 precluding the County from offering evidence or argument regarding its damages claim for future policy benefits. The Court notes, however, that the Tetra Tech documents were timely produced. Thus, the spend plans can be used, just not for the purpose of a future policy benefits damages claim.

Although the Court need not reach ICSOP's remaining arguments, the Court will address them as they implicate other motions *in limine* and will provide additional clarity for trial.

  B.  Judicial Admission

ICSOP argues that "the County affirmed in its reply in support of its motion for partial summary judgment that [the County] was not seeking damages for amounts that had not actually been paid by the County," and its affirmation constitutes a "judicial admission that precludes the County from asserting the previously undisclosed claim for future benefits at this stage." *MIL 7* 7:19–24.

"Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). "[S]tatements of fact contained in a brief may be considered admissions of the party in the discretion of the district court." *Id.* at 227. But to be a judicial admission, a statement must be "deliberate, clear, and unequivocal." *E.g., Breville USA, Inc. v. Hurom L.S. Co.*, No. CV 13-8324 DMG (AJWx,) 2014 WL 12600145, at *5 (C.D. Cal. Apr. 28, 2014); 32 C.J.S. Evidence § 527 ("Any deliberate, clear, and unequivocal statement, either written or oral, made in the course of a judicial proceeding, qualifies as a judicial admission.").

The County moved for partial summary judgment on ICSOP's twelfth affirmative defense relating to the "Condition J. Loss Payable" clause of the ICSOP policies, arguing that, contrary to ICSOP's assertion, nothing in the Loss Payable clause "conditions ICSOP's obligations on existence of a final judgment or compromise." *County's Mot. for Partial Sum. J.*, Dkt. # 75, 23:18–19:5. In Opposition, ICSOP countered that the "Loss Payable Provision expressly states that ICSOP need not make payment for [future economic losses and damages] unless and until the County actual[ly] incurs those costs," and, thus, the County "cannot show an absence of material facts supporting ICSOP's 12th Affirmative Defense." *ICSOP'S Opp. to County's Mot. for Partial Sum. J.*, Dkt. # 98, 25:10–20. In reply, the County stated:

---

involved willfulness, fault, or bad faith.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

> Finally, ICSOP now claims that it is asserting its 12th (Loss Payable) affirmative defense only to the extent that the County seeks to have ICSOP pay amounts before they are even paid by the County. Because this is the first time that ICSOP has shared this rationale and given ICSOP's penchant for shifting positions, this Court should enter an order granting the County's motion except insofar as the County seeks to have ICSOP pay amounts before they are even paid by the County **(which it does not, in any event)**.

*Reply ISO County's Mot. for Partial Sum. J.*, Dkt. # 114, 12:8–14 (emphasis added).

The Court denied the County's motion for summary judgment on ICSOP's twelfth affirmative defense because "the parties agree[d] in their papers that the affirmative defense is asserted only to the extent that the County seeks to have ICSOP pay amounts before they are paid by the County." *Sum. J. Order* 18.

At issue here is the parenthetical in the County's reply, which ICSOP contends is a judicial admission that bars the County from seeking future policy benefits. *See MIL 7* 7:19–24. The County contends that the statement was made in the context of ICSOP's affirmative defense concerning the Loss Payable provision in ICSOP's policies, and that it "merely said that it does not seek to have ICSOP pay amounts before they are even paid by the County." *MIL 7 Opp.* 5:12–20. And as such, the County stated that it "intended to comply with the Loss Payable provision." *Id.* 6:24–26. The County argues that as the "the Loss Payable provision only applies to claims for benefits under the contract, not to damages for breach of the implied covenant," the statement did not include any "reference to the County's pursuit of tort damages based on ICSOP's breach of the implied covenant of good faith and fair dealing." *Id.* 5:12–20.

"[C]ontractual insurance policies contain an implied covenant of good faith and fair dealing, which is characterized as 'insurance bad faith' and for which a plaintiff can receive tort damages." *Nat'l Bank of California v. Progressive Cas. Ins. Co.*, 938 F. Supp. 2d 919, 940 (C.D. Cal. 2013). Indeed, the breach of contract claim is a separate cause of action. And contrary to ICSOP's assertion that "to establish bad faith, there must be an associated breach of the insurance contract," *Id.* 11:15–16, a "breach of a specific provision of the contract is not a necessary prerequisite to a breach of an implied covenant of good faith and fair dealing." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999) (cleaned up); *see also Akopian v. JPMorgan Chase Bank, N.A.*, No. CV 14-05760-RGK (PLAx), 2014 WL 12591623, at *3 (C.D. Cal. Sept. 24, 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

ICSOP asks the Court to make the inferential leap that the County's statement, made in the context of its Loss Payable provision, indicated that the County also stated it would not seek future damages under its cause of action for breach of the implied covenant of good faith and fair dealing. *See FAC* ¶¶ 49–56. But the Court cannot read a "deliberate, clear, and unequivocal statement" that the County is no longer pursuing its tort damages from the County's parenthetical, particularly when the cause of action implicates different types of damages. Accordingly, the Court finds that the County's parenthetical does not amount to admission that it no longer sought a claim for future damages.

C. Relevance

ICSOP lastly argues that the County's claim for "future policy benefits lacks relevance." *See MIL 7* 11:1–15:3. ICSOP raises two arguments: (1) the County's claim for future policy benefits has no support in California law, *id.* 11:15–14:19; and (2) the County's claim for future policy damages lacks relevance because it cannot recover an amount in excess of the aggregate limit of the policies, *id.* 14:20–15:3; *see also id.* 2:15–3:5. The Court will address each in turn.

> i. *The County's claim for future policy benefits is not contrary to California law.*

ICSOP argues that the County's "claim that it is entitled to future policy benefits under the ICSOP Policies if it prevails on its claim for breach of the implied covenant [is] based on a misapplication of [*Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809 (1979)]." While conceding that the California Supreme Court in *Egan* found future policy benefits may be recovered in a valid tort cause of action for breach of the implied covenant of good faith and fair dealing, ICSOP argues the holding "was limited to the facts of the case and the specific provisions of the disability insurance policy at issue which provided lifetime benefits in the event of an irreversible condition (i.e. total disability)." *MIL 7* 12:15–13:2. ICSOP contends that *Egan* does not apply to the ICSOP policies, which include a loss payable provision, as "no court has applied *Egan*" to allow "the recovery of future policy benefits" under such circumstances. *MIL 7* 13:3–10.

ICSOP, however, reads *Egan* too narrowly. In *Egan*, the California Supreme Court stated:

> We have never held, however, that future policy benefits may not be recovered in a valid tort cause of action for breach of the implied covenant of good faith and fair dealing . . . . Thus, in applying to these facts the general rule for fixing tort damages

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

. . . , the jury may include in the compensatory damage award future policy benefits that they reasonably conclude, after examination of the policy's provisions and other evidence, the policy holder would have been entitled to receive had the contract been honored by the insurer.

24 Cal.3d at 824, fn. 7.

Contrary to ICSOP's assertion, the Supreme Court in *Egan* did not state that its finding was limited. Indeed, the Ninth Circuit has indicated that *Egan* "appl[ies] to insurance bad faith claims generally." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1012 (9th Cir. 2004) (citing *Pistorius v. Prudential Ins. Co.*, 123 Cal. App. 3d 541 (1981)). ICSOP has not provided any authority finding that *Egan* cannot apply to the policies at issue in this case. As such, it has not provided a reason for the Court to exclude the evidence of the County's future policy benefits on this basis. *Shenon v. New York Life Ins. Co.*, No. 2:18-CV-00240-CAS (AGRx), 2020 WL 1317722, at *7–8 (C.D. Cal. Mar. 16, 2020).

   ii. *Evidence of future costs in excess of the $27 million aggregate does not lack relevance.*

ICSOP argues that the aggregate limit of the ICSOP policies is $27 million. *MIL 7* 14:22–24. ICSOP has already paid $9 million to the County. *Id.* 14:26–28. Accordingly, ICSOP argues that "[g]iven the County cannot recover any amounts in excess of the aggregate limit, any evidence of future investigation and remediation costs in excess of $18 million that may or may not be incurred" lacks relevance and is unduly prejudicial. *Id.*

As an initial matter, though masked as a motion *in limine*, ICSOP seeks a dispositive ruling of the Court as to the aggregate limit of the policies. This is improper. "A motion *in limine* is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed." *E.g., Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013); *see also Altair Instruments, Inc. v. Telebrands Corp*, No. CV 19-8967 PSG (JCx), 2021 WL 5238787, at *1 (C.D. Cal. Feb. 18, 2021) ("[M]otions *in limine* should not be used as disguised motions for summary judgment."). The Court agrees with the County that ICSOP's argument "is nothing more than a disguised summary judgment motion that should have been raised when ICSOP moved for summary judgment on the aggregate limits so that the matter could be properly briefed." *MIL 7 Opp.* 17:10–13. Although the Court may reject ICSOP's argument on this basis alone, the Court will provide guidance on the merits of ICSOP's argument regarding the amount available under the aggregate limit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

ICSOP's argument is based on two provisions of the ICSOP polices: (1) the aggregate limit provided in Section II. Limit of Liability, Item 2(b); and (2) the Prior Insurance Non Cumulation of Liability provision—Condition C (referred to below as "Condition C" or "Non-Cumulation Provision"). *MIL 7* 2:16–3:5.

As to Section II. Limit of Liability, Item 2(b), the Court previously found that the "policies here unambiguously include a general aggregate limit." *Sum. J. Order* 15. The Limit of Liability provision states that ICSOP is liable "only up to a further sum as stated in Item 2(a) of the Declarations in all in respect of each occurrence," and "subject to a limit as stated in Item 2(b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease[.]" *Id.* 16. The Court interpreted Item 2(b) to establish that each ICSOP policy had a general aggregate limit of $9 million per year. *See id.* 3, 16. Because each policy is three years, each policy has a general aggregate limit of $27 million.[4]

At issue, however, is ICSOP's second contention. For the first time in the case, ICSOP argues that Condition C applies and reduces the aggregate limit of coverage under the County's latter two policies. Condition C provides:

> It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Item 2 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

---

[4] ICSOP claims that the Court "noted the importance of the aggregate limit ruling stating that no applicable aggregate limits under the insurance **policies** would create 'a coverage potential of $162 million instead of $27 million." *MIL 7* 2:21–24 (emphasis added). The Court, however, stated that Magistrate Judge McDermott "found that 'denying withdrawal would eliminate an issue of mammoth importance from consideration on the merits,' because the admission would establish no aggregate limits under the insurance **policy** and create 'a coverage potential of $162 million instead of $27 million.'" *Sum. J. Order* 7 (emphasis added). ICSOP attempts to misconstrue the Court's statements to suggest it previously determined there was only $27 million at issue. At summary judgment, the Court was referring to a singular policy, not all the polices as ICSOP suggests. If there was no aggregate limit and the eighteen occurrences occurred during the span of one policy, then there would be $162 million in coverage available. But, if the aggregate limit were applicable, then each policy would be limited to $27 million. While ICSOP appears to reference the Court's order to somehow suggest it capped the total liability at $27 million, the Court did no such thing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

*E.g., Exhibit A - ICSOP Policy 426-0772*, Dkt. # 5-2 ("*ICSOP Policy 426-0772*"), 5.[5]

ICSOP reads Condition C to indicate that once it pays the $27 million under the first policy, it will exhaust the limits on the other two policies—making the latter two policies valueless after the first limit is reached:

> If any loss covered under ICSOP Policy nos. 429-0989 (7/23/1969–1972) and 4272-1195 (7/23/1972–1975) is also covered in whole or in part under any other excess policy issued to the County prior to the inception date of those policies including ICSOP Policy no. 426-0772 (7/23/1966–1969), the aggregate limit of liability as stated in Item 2 of the Declarations shall be reduced by any amounts due to the County on account of such loss under such prior insurance.  Accordingly, to the extent the County can establish that three or more occurrences resulted in groundwater contamination emanating from the Chino airport throughout the policy periods of the ICSOP Policies that exhaust the $27 million aggregate limit of the first ICSOP Policy, the aggregate limits of the second and third ICSOP Policies is reduced to zero dollars as a result of such loss."

*MIL 7 Reply* 3:27–4:9.

In support of its interpretation, ICSOP points the Court to *Insurance Company of the State of Pennsylvania v. Cnty. of San Bernardino*, 2017 WL 2903259 (C.D. Cal. 2017), a prior litigation where the County sought coverage for the costs it incurred from a government-ordered cleanup of the Mid–Valley Sanitary Landfill.  *E.g., MIL 7* 3 n.1.  There, the Court found Condition C was an "anti-stacking" provision that allowed ICSOP to reduce $9 million from its per occurrence liability under the second and third policies.  *Ins. Co. of the State of Pennsylvania v. Cnty. of San Bernardino*, No. CV 16-0128 PSG (SSX), 2017 WL 2903259, at *4–5 (C.D. Cal. Mar. 8, 2017), *aff'd sub nom. Ins. Co. of Pennsylvania v. Cnty. of San Bernardino*, 776 F. App'x 400 (9th Cir. 2019).

---

[5] All three policies contain identical language.  *Sum. J. Order* 3 n.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

Both parties appear[6] to agree that Court's and the Ninth Circuit's rulings are only applicable to the per occurrence limit. *MIL 7 Reply* 5:18–19; *MIL 7 Sur-Reply* 1:18–22; *see also Ins. Co. of Pennsylvania v. Cnty. of San Bernardino*, 776 F. App'x 400, 401 (9th Cir. 2019) ("The question in this diversity case is whether certain language ('Condition C') in three policies issued by [ICSOP] to the [County] is an enforceable antistacking provision that precludes the County from aggregating the per-occurrence policy limits in the three policies.").

ICSOP states that it is the "rationale this Court and the Ninth Circuit used in applying the non-cumulation provision to the per-occurrence limit that ICSOP contends applies equally to the aggregate limit because the non-cumulation provision applies to both the per-occurrence and aggregate limit that are both set forth in Item 2 of the Declarations of each of the ICSOP Policies." *MIL 7 Response to Sur-Reply* 3:11–16.

The County's position is that the Non-Cumulation Provision does not apply here. Specifically, the County argues that "[b]y its plain terms, this provision only applies to reduce the limits of liability of subsequent ICSOP Policies if the same 'loss' is covered under more than one of the Policies." *MIL 7 Opp.* 17:27–18:2. The County "is seeking to obtain coverage for separate occurrences. It is not trying to 'stack' the same occurrence over multiple policies in order to get paid for the same occurrence under successive policies." *MIL 7 Opp.* 18:6–8. As a result, the County contends that the Non-Cumulation Provision is inapplicable and that $54 million in coverage remains available under the policies. The Court agrees with the County.

The key issue regarding whether Condition C is implicated is whether the later polices cover the same "loss." Condition C reduces later policies limits only by "any amounts due to the Assured on account of such loss under such prior insurance." ICSOP encourages the Court to interpret "loss" to broadly "apply to any property damage loss arising out of the alleged groundwater contamination emanating from the Chino Airport." *MIL 7 Reply* 9:12–15.

When interpreting the meaning of policy language, "courts must read limitations on coverage narrowly." *Chartrand v. Illinois Union Ins. Co.*, No. C 08–05805 JSW, 2009 WL 2776484, at *3 (N.D. Cal. Aug. 28, 2009); *see also Associated Indus. Ins. Co., Inc. v. McNicholas & McNicholas LLP*, 495 F. Supp. 3d 869, 875 (C.D. Cal. 2020) ("Insurance 'coverage is interpreted broadly so as to afford the greatest possible protection to the insured,'

---

[6] ICSOP has claimed that the "Court has found in prior litigation" that Condition C "prevents the County from stacking the aggregate limits of the latter two ICSOP Policies." *See ICSOP Opp. to County MIL 3*, Dkt. # 195, 7:27–8:2. But any contention that the Court had previously resolved the issue in this litigation is belied by its own statements and is false.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

while 'exclusionary clauses are interpreted narrowly against the insurer.'") (citing *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648, (2003)).

The policies at issue here are occurrence-based policies. *See Sum. J. Order* 3. The term loss in Condition C, must thus be tethered to occurrence and a separate occurrence must be a different loss. If the Court were to adopt ICSOP's interpretation, the Court would violate its instruction to construe limitations narrowly. ICSOP would have the Court read into the policy an obligation that the insured prove not just a separate occurrence but in addition that the separate occurrence resulted from a separate undefined loss. The language of the policies does not contemplate that dual obligation on the County. Indeed, in the prior litigation, ICSOP supported this interpretation by stating:

> [W]hile the term "loss" is undefined, if the term is read in context it plainly refers to a loss caused by a single occurrence. This is because the noncumulation provision expressly refers to a loss as reducing the limit of liability in Item 2 of the declarations, and Item 2 of the declarations sets forth the $9 million limit in all for each occurrence. Thus, the non-cumulation provision anticipates that if the limit of liability applies to the loss, then the limit of liability will be reduced by any payment made under a prior excess policy issued to the County. This means that loss as used in the non-cumulation provision is a loss caused by a single occurrence.

*MIL 7 Sur-Reply*, Ex. A, *ICSOP's Opp. to County's Mot. for Partial Sum. J.*, 18:15–23.

This interpretation further supports the function of Condition C as it prevents a policyholder from stacking the policy limits and obtaining coverage from the same occurrence over multiple periods. Condition C reduces later policies limits only by "any amounts due to the Assured on account of such loss under such prior insurance." It cannot be read to suggest that the aggregate limit for a previous policy could reduce the coverage available for an occurrence that has yet to be paid. To read so would suggest that the County did not purchase coverage from the second and third policies for damage resulting from a separate occurrence that took place during the second and third policy periods if the aggregate limits on the first policy had been exhausted. *See Cannon Elec., Inc. v. Ace Prop. & Cas. Co.*, 2021 Cal. Super. LEXIS 7423, *131–132 ("The purpose of the Non Cumulation condition is if a policy holder seeks to recover for the same loss under more than one year's policy, its recovery for that loss must be limited to the amount of one year's limits for that loss. Its purpose is not to eradicate aggregate limits for losses no insurer has paid. . . . In short, the condition does not apply until the insured has already obtained indemnification for that specific loss from another policy in the relevant coverage layer.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 14, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

Lastly, even if the provision was ambiguous, it must be interpreted based on the insured's objectively reasonable expectations. Here, the County could not have expected that the aggregate limit of an earlier policy would exhaust coverage for separate occurrences in later years. It entered an occurrence-based insurance policy. If the "loss" contemplated in Condition C were broader, the County would be subjecting itself to prove both an occurrence, and that the occurrence was part of a separate loss. That could not be what the County expected when entering the policy.

Accordingly, the Court agrees with the County that because "same 'loss' is not at issue, this provision is immaterial." *MIL 7* 18:7–8. Because the County is seeking coverage for multiple occurrences, each occurrence can be covered fully under one ICSOP policy, and thus the non-cumulation clause is not implicated.

IV.  Conclusion

For the foregoing reasons, ICSOP's motion *in limine* No. 7 is **GRANTED**. The County may not introduce evidence of damages for its future policy benefits, but the County, however, is not precluded from introducing the Tetra Tech's spend plans for any other purpose.

**IT IS SO ORDERED.**