UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

Present: The Honorable | Philip S. Gutierrez, United States District Judge

| Kelly Davis | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**  **Order GRANTING IN PART and DENYING IN PART the County's MIL 5 [Dkt. # 158]; DENYING the County's MIL 9 [Dkt. # 170]; GRANTING IN PART and DENYING IN PART ICSOP's MIL 1 [Dkt. # 162]; DENYING ICSOP's MIL 2 [Dkt. # 163]; GRANTING ICSOP's MIL 3 [Dkt. # 164].**

Before the Court are five motions *in limine*. Four motions *in limine* seek to exclude or limit the testimony of the opposing party's expert witnesses. Plaintiff San Bernardino County (the "County") filed two motions *in limine*. *See* Dkt. # 158 ("*County MIL 5*"); Dkt. # 170 ("*County MIL 9*"). Defendant The Insurance Company of the State of Pennsylvania ("ICSOP") also filed two. *See* Dkt. # 162 ("*ICSOP MIL 1*"); Dkt. # 163 ("*ICSOP MIL 2*"). ICSOP opposed the County's motions. *See* Dkt. # 198 ("*County MIL 5 Opp.*"); Dkt. # 201 ("*County MIL 9 Opp.*"). The County opposed ICSOP's motions. Dkt. # 223 ("*ICSOP MIL 1 Opp.*"); Dkt. # 224 ("*ICSOP MIL 2 Opp.*"). Both parties replied. *See* Dkt. # 246 ("*County MIL 5 Reply*"); Dkt. # 252 ("*County MIL 9 Reply*"); Dkt. # 257 ("*ICSOP MIL 1 Reply*");[1] Dkt. # 235 ("*ICSOP MIL 2 Reply*").[2]

In addition, the Court will consider ICSOP's motion *in limine* No. 3, seeking to exclude evidence of the parties' prior settlement agreement, because it covers the same issues as its motion *in limine* No. 1. *See* Dkt. # 185 ("*ICSOP MIL 3*"). The County opposed, *see* Dkt. # 212-

---

[1] The Court cites the unredacted versions of the opposition and reply to ICSOP's motion *in limine* No. 1. The original version of the County's opposition can be found at Docket Entry Number 207, and the original version of ICSOP's reply can be found at Docket Entry Number 234.

[2] The Court cites the unredacted version of the opposition to ICSOP's motion *in limine* No. 2. The original version of the County's opposition can be found at Docket Entry Number 204.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

4 ("*ICSOP MIL 3 Opp.*"), and ICSOP replied, *see* Dkt. # 258 ("*ICSOP MIL 3 Reply*").[3]  After thoroughly considering the arguments in the papers, the Court:  **GRANTS in part** and **DENIES in part** the County's motion *in limine* No. 5; **DENIES** the County's motion *in limine* No. 9; **GRANTS in part** and **DENIES in part** ICSOP's motion *in limine* No. 1; **DENIES** ICSOP's motion *in limine* No. 2; **GRANTS** ICSOP's motion *in limine* No. 3.

    I.    <u>Background</u>

    This case involves a dispute between the County and ICSOP over insurance coverage for groundwater contamination at the Chino Airport.  *See generally* Dkt. # 5 ("*Compl.*").  On November 24, 2021, the County filed a complaint in this Court seeking damages and declaratory relief for ICSOP's alleged failure to comply with the insurance policies ("ICSOP Policies").  *See generally id.*  At issue for trial is "whether the County can prove breach of contract and breach of the implied duty of good faith and fair dealing by establishing multiple occurrences."  Dkt. # 123 ("*Sum. J. Order*"), 19.  Both parties now bring multiple motions seeking to exclude and/or limit opposing expert witness testimony.

    II.    <u>Legal Standard</u>

    A.    <u>Motions *in Limine*</u>

    A motion *in limine* is "a procedural mechanism to limit in advance testimony or evidence in a particular area."  *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  A party may also file a motion *in limine* to admit evidence.  *See United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991).  A court has the power to grant such motions pursuant to its "inherent authority to manage trials," even though such rulings are not explicitly authorized by the Federal Rules of Evidence ("FRE").  *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  Regardless of a court's initial decision on a motion *in limine*, however, it may revisit the issue at trial.  *Id.* at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

---

[3] The Court cites the unredacted versions of the motion, opposition, and reply.  The original version of the motion can be found at  Docket Entry Number 164.  The original version of the opposition can be found at Docket Entry Number 208.  The original version of the reply can be found at Docket Entry Number 236.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

B.    Expert Opinion Evidence

FRE 702 provides that expert opinion evidence is admissible if the proponent demonstrates to the court that it is more likely than not that: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.  Fed. R. Evid. 702; *see also Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1023 (9th Cir. 2022).

FRE 702 requires district courts to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Elosu*, 26 F.4th at 1024 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)).  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Id.* (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)).

With respect to reliability, the test is "whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (internal citation omitted).  "To evaluate reliability, the district court 'must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance.'" *Elosu*, 26 F.4th at 1024 (quoting *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014)).  "These factors are nonexclusive, and 'the trial court has discretion to decide how to test an expert's reliability based on the particular circumstances of the particular case.'" *Id.* (quoting *City of Pomona*, 750 F.3d at 1044)) (cleaned up); *see also Alaska Rent-A-Car, Inc.*, 738 F.3d at 969 (explaining that the *Daubert* reliability requirement "is flexible").  "[T]he critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology," are threshold questions of admissibility.  Fed. R. Evid. 702, advisory committee note 1 to 2023 amendment.

The district court is "a gatekeeper, not a fact finder." *Elosu*, 26 F.4th at 1024 (quoting *Primiano v. Cook*, 598 F.3d 558, 568 (9th Cir. 2010)).  "[FRE] 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Id.* at 1026.  "Accordingly, 'the district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'" *Id.* (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

*Alaska Rent-A-Car, Inc.*, 738 F.3d at 969–70) (cleaned up); *see also* Fed. R. Evid. 702, advisory committee note 1 to 2023 amendment ("Applying a higher standard than helpfulness to otherwise reliable expert testimony is unnecessarily strict."). The Ninth Circuit has emphasized *Daubert*'s guidance that Rule 702 "should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (citing *Daubert*, 509 U.S. at 588).

The party seeking to submit expert testimony bears the burden of proving admissibility. *Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). "[P]roponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.'" Fed. R. Evid. 702, advisory committee note 1 to 2023 amendment (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

III.    Discussion

The Court will first address the County's motions to exclude or limit the opinions of ICSOP's proposed experts. It will then address ICSOP's motions.

A.    The County's Motions *in Limine*

The County challenges the opinions of two of ICSOP's proposed experts: Dr. Adam H. Love and Mr. Paul C. Thompson III. *See generally County MIL 5*; *County MIL 9*.

i.    *The County's Motion* in Limine *No. 5 to Exclude Testimony of Dr. Adam Love*

The County moves to exclude Dr. Love's testimony on five bases: (1) Dr. Love lacks sufficient factual basis for his methods to be reliable; (2) Dr. Love improperly offers opinion on the ultimate issue; (3) Dr. Love's opinions are speculative and prejudicial; (4) Dr. Love's methodology is unreliable; and (5) Dr. Love applies his methodology inconsistently. *See generally County MIL 5*; *County MIL 5 Reply*. The Court will take each basis for exclusion in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

*a. First basis*

The County argues that because Dr. Love opines that the County cannot show eighteen separate and distinct occurrences due to lack of evidence, Dr. Love cannot opine that there was "continuous and repeated exposure to conditions associated with historical waste disposal practices," because his opinions would also suffer the same criticism. *See County MIL 5* 6:1–9:3; *County MIL 5 Reply* 2:15–5:8. The County further asserts that Dr. Love does not have a scientifically valid or reliable methodology because his opinion of "continuous or repeated exposures" is based solely on a lack of alternative explanation. *County MIL 5* 7:26–8:3.

ICSOP responds that the County improperly conflates Dr. Love's criticisms of the County's lack of evidence with the basis for Dr. Love's opinions. *County MIL 5 Opp.* 12:17–20. Dr. Love bases his opinions on physical data from the airport, such as measurements of the presence of chemicals in the soil, observed environmental impacts in the soils, and any impacts to the underlying groundwater. *Id.* 12:20–26. By looking at the data, Dr. Love determined that areas of the airport have soil impacts that reflect a surface release of chemicals from historical waste and disposal practices which appear to be contributing to the groundwater impacts beneath those locations. *Id.* 12:24–13:3; *see Declaration of Anthony S. Newman i/s/o County MIL 5*, Dkt. # 158-1 ("*Newman Decl. 5*"), ¶ 2, Ex. A, *Expert Report of Dr. Adam H. Love*, Dkt. # 158-2 ("*Love Rep.*"), 39. Dr. Love then confirmed that these areas of the airport were also historically used for aircraft maintenance and operations. *Id.*

The Court finds that Dr. Love's opinion has factual support because he relied on the data about the chemicals found or not found in the soil at various areas at the airport. And while Dr. Love lacks documentation of historical operations, chemicals used, or waste disposal practices, he has the findings of the California Regional Water Quality Control Board's 1990 Cleanup and Abatement Order ("1990 CAO") that details the poor airport-wide waste management practices. *See Love Rep.* 39. His comparison of suspected historical activity outlined in the 1990 CAO to the actual physical site data is a sufficiently reliable methodology. *See Declaration of Dr. Adam H. Love*, Dkt. # 198-1 ("*Love Decl.*"), ¶ 2; *see also Maffei v. N. Ins. Co. of New York*, 12 F.3d 892, 898 (9th Cir. 1993) ("The circumstances of the release were unwitnessed and thus required scientific deductions from circumstantial evidence."). Further, because he has factual support, Dr. Love's criticisms of the County for its lack of documentation are not in conflict with his opinions. Accordingly, Dr. Love's testimony is admissible.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

> *b.*      *Second basis*

The County argues that Dr. Love gives improper opinions on the ultimate issue—whether the alleged groundwater contamination was caused by or arises out of one or more occurrences, *see Sum. J. Order* 19; *County MIL 5* 1:6–9; *County MIL 5 Opp.* 14:22–25—because Dr. Love repeatedly makes conclusions using the words from the definition of "occurrence" in the insurance policies and because those words are judicially defined. *See County MIL 5* 9:5–10.

"As a general rule, 'testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'" *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (quoting Fed. R. Evid. 704(a)). "That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Id.* (citation omitted); *see also United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015). Additionally, "courts have held that expert witnesses' use of 'judicially defined terms,' 'terms that derived their definitions from judicial interpretations,' and 'legally specialized terms' constitutes an expression of opinion as to the ultimate legal conclusion." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 558 (C.D. Cal. 2014) (cleaned up).

"Occurrence" is defined in the ICSOP Policies as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period." *Sum. J. Order* 4. And "[a]ll such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence." *Id.*

In his first opinion, Dr. Love states that the groundwater remediation system was designed to address "the continuous and repeated exposure to conditions associated with historic airport-wide waste disposal practices." *Love Rep.* 21. Throughout his second opinion, Dr. Love repeatedly states that "[e]ven if releases did happen over multiple operators, such releases would reflect continuing and repeated releases resulting from substantially the same general condition at the Airport (chlorinated solvent use and disposal practices associated with aircraft maintenance and operations)." *Id.* at 23–39. And in his third opinion, he says that where chemicals in the soil have been detected, the chemicals "result[] from the continuous and repeated exposure to conditions associated with historic airport-wide waste disposal practices." *Id.* at 39.

The Court disagrees with the County and finds that Dr. Love's use of the phrase "continuous and repeated exposure" does not amount to an opinion on an ultimate issue of law;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|

| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania |
|---|---|

instead, his opinions are merely "embracing" an ultimate issue. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar v. Cal State Univ., Hayward*, 299 F.3d 1053, n.10 (9th Cir. 2002) ("It is well-established . . . that expert testimony concerning an ultimate issue is not per se improper."); Fed. R. Evid. 704.  Dr. Love offers opinions about the source of the groundwater contamination without directly concluding that the continuous and repeated releases constitute an occurrence, defining an occurrence, or determining how many occurrences exist at the airport. *See McHugh v. United Serv. Auto. Assn.*, 164 F.3d 451 (9th Cir. 1999) (excluding experts' testimony that a "landslide" had occurred under the terms of the insurance policy but considering the experts' testimony describing the event using the definition of a landslide of "a saturated mass of soil and trees"); *cf. Maffei*, 12 F.3d at 898–99 (finding an expert's opinion improper where the ultimate issue was whether the fire was a "hostile fire" and the expert explicitly concluded it was a "hostile fire").

Nor is the phrase, "continuous or repeated exposure to conditions" a judicially-defined and legally-specialized term:  The jury is not determining whether a release of chemicals was continuous or repeated, but whether that constitutes an individual occurrence. *Cf. In re ConAgra Foods, Inc.*, 302 F.R.D. at 558 (holding that an expert could not use the terms "false" and "deceptive," because they were judicially-defined terms as it was for the jury to decide the legal conclusions of whether the manufacturer "falsely" and "deceptively" labeled its products).  Dr. Love's testimony does not improperly usurp the role of the fact-finder.

### c.    Third basis

The County argues that Dr. Love's methodology is inconsistent with his expert reports in previous cases. *County MIL 5* 12:15–17:7.  In his previous reports, Dr. Love opined on the release of contaminants without supporting documentation, yet in several of his current opinions he criticizes the County for speculating about operations and releases of contaminants without any documentation to support such a conclusion. *Id.*  Dr. Love explained the differences in his reports during his deposition, *see Newman Decl. 5* ¶ 4, Ex. C, *Deposition Transcript of Dr. Adam H. Love*, Dkt. # 158-4 ("*Love Dep. Tr.*"), 256:2–12; 257:4–261:5; 263:3–270:3, and in his declaration, *see Love Decl.*, ¶¶ 3–5.  Dr. Love stated that in the previous cases there was evidence of chemicals in the soil to support his conclusions, despite the lack of documentary support. *Id.*  Conversely, here, Dr. Love is criticizing the County's lack of documentary support because Dr. Love also finds that there is no evidence of chemicals in the soil in many of the areas the County identifies. *Id.*  The Court agrees that Dr. Love's methodology is reliable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

        *d.     Fourth basis*

The County next argues that Dr. Love's Hydrus model should be excluded because it was built using inaccurate data.  *See County MIL 5* 17:8–18:23.

While models may be used by experts to support their opinions, the models must be reliable.  "The key to a model's reliability is in large part based on its documented calibration." *Crescenta Valley Water Dist. v. Exxon Mobile Corp.*, No. CV 07-2630-JST (ANx), 2013 WL 12116333, at *5 (C.D. Cal. Jan. 8, 2013); *Abarca v. Franklin County Water Dist.*, 761 F. Supp. 2d 1007, 1060 (E.D. Cal. 2011) ("[I]t is undisputable that calibration is a 'critical' and 'valuable' step that ensures that model simulation matches the field observation to a reasonable degree."). A well-calibrated model is one that can replicate real-world conditions.  *See Abarca*, 761 F. Supp. 2d at 1056 ("[A]n expert must test or 'calibrate' a model to align the model predictions with field observations.").  A model that is not calibrated or is "partially-calibrated . . . may not be scientifically sound."  *Id.* at 1072 ("A half-calibrated model is, by definition, inadequately calibrated and excluded under *Daubert*.").

In his report, Dr. Love criticizes the model of the County's expert, Dorinda Shipman. Ms. Shipman used Hydrus, a software modelling program, to calculate the estimated time needed for a contaminant that was released at the ground surface to impact groundwater.  *County MIL 5* 17:10–13.  Her model relies on, amongst other things, an input of data through 1980 of the ambient temperature and annual rainfall from publicly available sources.  *Id.* at 17:13–16.  In reviewing her model, Dr. Love extended the time period of her model to 2020.  *Id.* at 17:22–24. However, because the weather stations from which Ms. Shipman had derived her data were discontinued in the 1980s, *Love Decl.* ¶ 9, the County says Dr. Love used the rainfall data for 1975 through 1980 from Ms. Shipman's model to project the next forty years, *County MIL 5* 17:26–28.  The County argues that this is not a scientifically valid method and thus Dr. Love's results and conclusions pertaining to the Hydrus model should be excluded.  *Id.* at 18:19–22.

Dr. Love disputes that he merely copied the data from Ms. Shipman's model for 1975 to 1980; instead, he declared that he used rainfall data for 1980 to 2020 from a different weather station.  *Love Decl.* ¶¶ 9–10.  However, his declaration is directly contradicted by his deposition testimony:

        We didn't specifically have the precipitation numbers for that time frame because we had a short time frame to do this.  So we just took essentially the . . . precipitation data from 1975 to 1980 and just cut and paste that for the subsequent years as being sort of a representative variation in precipitation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

*Love Dep. Tr.* 221:20–1.  ICSOP does not argue that using the data from 1975 to 1980 as a proxy for data for the next 40 years is a scientifically valid and reliable method.  *See generally County MIL 5 Opp.*  And ICSOP's attempt to cover up Dr. Love's actual method of calculation with his declaration further exposes that Dr. Love's method is unreliable.  As a result, Dr. Love may not opine on his findings from extending Ms. Shipman's Hydrus model from 1980 to 2020.

> *e.      Fifth basis*

The County lastly argues that because Dr. Love has no information on the historical operations or waste disposal practices at the airport, his third opinion that the four airport hangars are the single release location is not based on a result-driven or reliable scientific method.  *County MIL 5* 19:25–20:25.

Dr. Love's opinion, however, is based on the physical site data he collected and the 1990 CAO Report.  *See supra* § III.A.i.a.  While he may not have a complete picture, that is the purpose of an expert witness—to opine on what may have happened based on the available information.  *See Maffei*, 12 F.3d at 898 ("The circumstances of the release were unwitnessed and thus required scientific deductions from circumstantial evidence.").  To the extent that the County disagrees with Dr. Love's conclusions made from the available site data, that goes to the weight of the evidence, rather than its admissibility.  *See Nicholson v. Medina*, No. 2:10–cv–01425–KJM–EFB, 2013 WL 6198187, at *2 (E.D. Cal. Nov. 27, 2013) (finding that expert's ability to only opine that an individual may or may not have a disease due to the lack of available information went to the weight, not the admissibility, of his expert opinion).

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the County's motion *in limine* No. 5.  Dr. Love is permitted to testify to all his opinions in his report except his findings from extending Ms. Shipman's Hydrus model from 1980 to 2020.

> *ii.      The County's Motion* in Limine *No. 9 to Exclude or Limit Testimony of Mr. Paul C. Thomson III*

Mr. Thomson is ICSOP's claim handling expert, and the County moves to exclude or limit Mr. Thomson's testimony on three bases:  (1) The County does not think Mr. Thomson's experience qualifies him as an expert on the opinions he provides; (2) the County wants to limit Thomson's testimony criticizing the qualifications of its expert, Professor Stephen Prater; and (3) the County wants Mr. Thomson to be barred from making *ad hominem* attacks against Professor Prater.  *See generally County MIL 9.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

### a.    First basis

Mr. Thomson opines on whether ICSOP's investigation into the causes, sources, and timing of groundwater contamination at the Airport, and whether ICSOP's analysis of the number-of-occurrences issue based on such investigation, comported with industry custom and practice with regard to environmental claims under direct insurance. *Id.* 5:5–8.  The County says Mr. Thomson lacks the experience to do so because he has only handled claims under direct insurance for four years, between 1978 and 1982, "well before the onslaught of environmental claims that resulted in the development of claims handling customs and standards applicable to environmental claims." *Id.* 5:11–14.  His experience since 1982 has been in the reinsurance business, which the County asserts is substantially different. *See id.* 2:4–7; 6:1–7:8.

"[FRE] 702 contemplates a broad conception of expert qualifications." *Hangarter*, 373 F.3d at 1015.  An expert's experience alone can provide a sufficient foundation for expert testimony, so long as the witness explains "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Empire Land, LLC v. Empire Partners, Inc.*, No. CV 16–00820 DDP, 2017 WL 6496432, at *2 (C.D. Cal. Dec. 18, 2017) (citing Fed. R. Evid. 702 advisory committee note to 2000 amendment).  Consequently, "an expert need not be officially credentialed in the specific matter under dispute." *See Massok v. Keller Indus., Inc.*, 147 F. App'x 651, 656 (9th Cir. 2005) (citing *United States v. Garcia*, 7 F.3d 885, 889–90 (9th Cir. 1993)).

Mr. Thomson's curriculum vitae shows that he has over 16 years of experience from 1978 to 1994 as an insurance claims handler and reinsurance claims handler and executive, which included responsibility for numerous progressive or continuous environmental property damage and personal injury claims under excess and umbrella liability. *See Declaration of Anthony S. Newman i/s/o County MIL 9*, Dkt. # 170-1 ("*Newman Decl. 9*"), ¶ 4, Ex. C, *Expert Report of Paul C. Thomson III*, Dkt. # 170-4 ("*Thomson Rep.*"), Ex. 1 ("*Thomson CV*").  Mr. Thomson also has almost 30 years of experience from 1994 to present in claim-based consulting and expert services to insurance and reinsurance companies and to other interested parties. *Id.*; *County MIL 9 Opp.* 16:16–18.

Further, Mr. Thomson has provided expert reports on claim handling in twenty matters, testified as an expert in three maters, and has never been disqualified as an expert. *See County MIL 9 Opp.* 12:18–15:20; *Declaration of Paul C. Thomson III i/s/o County MIL 9 Opp.*, Dkt. # 201-1, ("*Thomson Decl.*"), ¶¶ 12–13; *see also Hangarter*, 373 F.3d at 1015 (finding an expert qualified to testify on insurance practices in part because he had testified in twelve other cases and had never been found unqualified).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

"Clearly, this lays at least the minimal foundation of knowledge, skill, and experience required in order to give 'expert' testimony" on whether ICSOP comported with industry custom and practice. *Hangarter*, 373 F.3d at 1015 (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). And even if the Court agreed that Mr. Thomson's direct insurance experience was "slight in comparison to his experience" as a reinsurer and that the industries meaningfully differ, "the question of the degree of expertise or knowledge 'goes to the weight of the testimony rather than to its admissibility.'" *MJC Supply, LLC v. Scottsdale Ins. Co.*, No. CV 18-1265 RSWL-SK, 2019 WL 2501480, at *2 (C.D. Cal. June 16, 2019) (quoting *Jeffer, Mangels & Butler v. Glickman*, 286 Cal. Rptr. 243, 249 (Cal. Ct. App. 1991)).

> *b.   Second and Third Bases*

ICSOP states that in the meet and confer discussions it agreed that Mr. Thomson would not make any *ad hominem* statements regarding Professor Prater and that it did not intend to have Mr. Thomson offer any opinions regarding Professor Prater's qualifications. *County MIL 9 Opp.* 2:24–3:2. Both parties and the Court agree that Mr. Thomson should not testify about these matters, so the Court need not intervene. In summary, the Court **DENIES** the County's motion *in limine* No. 9.

> B.   ICSOP's Motions *in Limine*

ICSOP challenges the opinions and testimony of two of the County's proposed experts: Professor Stephen D. Prater and Mr. Jeffrey H. Kinrich. *See generally ICSOP MIL 1*; *ICSOP MIL 2*.

> > i.   *ICSOP's Motion* in Limine *No. 1 to Preclude Testimony of Professor Stephen Prater*

The County hired Professor Prater to testify about insurance industry customs and practices and whether ICSOP followed them in support of the County's claim that ICSOP acted in bad faith and breached the implied covenant of good faith and fair dealing. In his report, Professor Prater lays out thirteen "reasons"[4] why he believes ICSOP's handling of the County's claim did not comport with industry custom and practice. *See generally Declaration of Nicholas B. Salerno i/s/o ICSOP MIL 1*, Dkt. # 162-1 ("*Salerno Decl. 1*"), ¶ 2, *Expert Report of Professor Stephen D. Prater*, Dkt. # 162-2 ("*Prater Rep.*"). ICSOP seeks to exclude most of Professor

---

[4] Professor Prater organizes his underlying opinions as "reasons" that support his overall opinion that ICSOP failed to comply with the custom and practice for reasonable claims handling in the insurance industry. *See Prater Rep.* Each reason is supported by several numbered paragraphs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

Prater's supporting reasons and opinions on eight bases. *See generally ICSOP MIL 1*. The Court will discuss each basis in turn.

> a.    *First Basis*

ICSOP first argues that several of Professor Prater's opinions in his report are unreliable and precluded as contrary to law because they are based on an incorrect coverage standard. *ICSOP MIL 1* 11:7–13:19.

In the Court's summary judgment order, the Court made two findings relevant to this motion. First, the Court determined that the ICSOP Policies contained a duty to indemnify, not a duty to defend. *Sum J. Order* 9–10. A duty to indemnify is narrower than a duty to defend because

> a duty to defend requires an insurer to defend a suit which potentially seeks damages within policy coverage, . . . while a duty to indemnify requires the insurer to reimburse only for claims that are actually covered . . . .

*Id.* (cleaned up). Second, the Court determined that the insured bears the burden of proof:

> The general rule under California law is that the insured bears the burden of establishing "that the occurrence forming the basis of their claim is within the basic scope of insurance coverage."

*Sum. J. Order* 11 (cleaned up). ICSOP claims that many of Professor Prater's opinions about the bad faith claim improperly shift the burden onto ICSOP to show the claim does not involve more than one occurrence. ICSOP says this is done in two ways: Either by directly misstating the burden or incorrectly conflating two coverage standards—the duty to indemnify and the duty to defend.[5] *ICSOP MIL 1* 11:7–13:19.

The County concedes that because Professor Prater's report was issued prior to the Court's summary judgment ruling, he can no longer testify to the opinions that run contrary to the Court's determination. *ICSOP MIL 1 Opp.* 1:27–2:4; *see also id.* 10 n.3. But the County

---

[5] ICSOP argues that by conflating the standards, Professor Prater is able to conclude that ICSOP acted in bad faith when it refused to reimburse the County even when the County had not proven the existence of multiple occurrences and even though that is not what the duty to indemnify requires. *ICSOP MIL 1* 11:7–13:19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

contends that most of Professor Prater's opinions remain unaffected by the Court's ruling because those opinions do not rely on the legal burden or the duty-to-defend standard. *Id.* 2:4–7, 7:12–8:2.

ICSOP identifies several paragraphs throughout Professor Prater's report that it says contain improper opinions. *See ICSOP MIL 1* 11:16–17. But the Court finds that most of the paragraphs are not contrary to law or the Court's order. Most of the paragraphs merely lay out the industry standards for insurers and whether ICSOP has met them without discussing the legal burden or a duty to defend at all. Opining on whether ICSOP fulfilled its investigation and claim handling duties in its role as insurer is not the same as shifting the legal burden onto ICSOP to prove the number of occurrences to a jury or asserting that ICSOP had a duty to defend.

There are, however, a few paragraphs that discuss the wrong legal burden or apply the duty-to-defend standard, and thus should be excluded in whole or in part. The Court excludes Professor Prater's opinions contained in the following paragraphs or sentences: Paragraph 73 entirely, because it places a duty to defend on ICSOP and the County concedes should be excluded, *ICSOP MIL 1 Opp.* 10 n.3; paragraph 76 entirely, for the same reasons, *id.*; the last sentence of paragraph 112, as it directly conflicts with this Court's ruling on the burden; paragraphs 113 and 114, entirely because they contradict the Court's ruling; and paragraph 123 entirely, because it implies a duty to defend.

> b.    *Second Basis*

ICSOP next argues that Professor Prater's opinions characterize the claim as a first-party claim, making them unreliable and contrary to law. *ICSOP MIL 1* 13:20–15:14. ICSOP also states that Professor Prater's opinion that ICSOP's issuance of a reservation-of-rights letter was in bad faith is similarly improper as a result of him analyzing it as a first-party claim. *Id.* 15:15–16:28.

The County counters that it is not arguing that the insurance policies are not third-party liability policies; instead, Professor Prater is asserting that first-party claim standards govern, nonetheless. *ICSOP MIL 1 Opp.* 11:23–26; *see Prater Rep.* ¶ 43 ("While the ICSOP Policies provide third party liability coverage, they are not traditional duty-to-defend policies and instead impose on ICSOP a first party obligation to pay the County's loss, to which first party claims handling obligations apply."). The Court agrees because a violation of California Insurance Code § 790.03—which defines unfair practices in the insurance industry and on which Professor Prater relies in his report—is assessed using first-party claim standards:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

When evaluating an insurer's alleged violation of Insurance Code section 790.03, **we are guided by the principles of first party coverage**, and the fact that the insurer owes its insured an independent duty to process all claims submitted to it in a reasonable manner, and not to delay, to the insured's prejudice, the ultimate decision to defend or indemnify.

*Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 36 (1995) (emphasis added).  Professor Prater's opinions are not contrary to law.

To the second point, the County concedes that California law provides that an insurer may provide coverage subject to a reservation of rights but argues that because ICSOP refused to provide coverage at all, it is fair game to opine that ICSOP's issuance of reservation-of-rights letter was sent in bad faith.  *ICSOP MIL 1 Opp.* 12:16–9.  ICSOP replies that ICSOP *did* "reimburse[] the County for its investigation and remediation expenses as they were incurred by the County to respond to those claims up to one per occurrence limit and reserved rights while it continued to investigate whether the claim involved more than one occurrence."  *ICSOP MIL 1 Reply* 7:22–25.  But these back-and-forth arguments regarding whether or not ICSOP improperly withheld coverage only show that this is a factual issue for the jury to determine.

ICSOP also argues that Professor Prater's opinion about the reservation-of-rights letter is unreliable for lack of support, *ICSOP MIL 1* 4:15–16:25, but the Court disagrees.  In his deposition, Professor Prater pointed to an unpublished article he wrote as a repository of all the support for his opinion as to why a reservation-of-rights letter may constitute bad faith.  *See Declaration of Anthony S. Newman i/s/o ICSOP MIL 1 Opp.*, Dkt. # 207-1 ("*Newman Decl. 1*"), ¶ 5, Ex. D, *Deposition Transcript of Professor Stephen D. Prater*, Dkt. # 207-5, 129:18–130:25; *Newman Decl. 1* ¶ 6, Ex. E, *Article of Professor Stephen D. Prater*, Dkt. # 207-6.  The article cites numerous California court opinions and sections of the California Insurance Code, which sufficiently demonstrate that this opinion is not merely his subjective belief.

The Court, therefore, declines to preclude Professor Prater's opinions applying first-party claim standards to the insurance policies, here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

<i>c.</i>  <i>Third Basis</i>

ICSOP challenges Professor Prater's opinions in his fourth reason—which state that ICSOP falsely told the County that it was unaware of any facts to support additional occurrences, even though it had increased its own cost forecasts for the claim—as unreliable and contrary to the facts of the case. *ICSOP MIL 1* 17:1–19:23. Specifically, ICSOP contends Professor Prater ignores the repeated testimony of ICSOP witnesses that the Pollution and Asbestos Quarterly Reports ("PAQR")—prepared by ICSOP for actuaries and showing the increased forecast—were not claim reserves but descriptions of a worst-case coverage exposure scenario. *Id.* 17:28–19:10.

However, Professor Prater acknowledges in his report that multiple witnesses testified that the PAQRs did not describe formal reserves. *See Prater Rep.* ¶ 54(e) n.5. Even in light of that, he finds that the "substantial increases in amounts forecast for the Chino Claim—all in multiples of the policy's $9 million per occurrence limit—demonstrate ICSOP's awareness of a suggestion (if not more than a suggestion) that the Chino Claim involves multiple occurrences." *Id.* Professor Prater does not mischaracterize the evidence, but instead draws an inference from it that ICSOP finds unfavorable. Moreover, whether the PAQRs did or did not describe an increased claim reserve is an issue of fact for the jury to determine. The Court will not preclude Professor Prater's opinions in his fourth reason on these grounds.[6]

<i>d.</i>  <i>Fourth Basis & ICSOP's Motion</i> in Limine <i>No. 3</i>

ICSOP next challenges Professor Prater's opinions in his tenth and eleventh reasons. *ICSOP MIL 1* 19:24–21:5. Professor Prater's opinions set forth in his tenth reason state that ICSOP's decision to stop paying the County was unreasonable in light of the parties' 2012 settlement agreement in *County of San Bernardino., et al. v. Insurance Company of the State of Pennsylvania, et al.*, San Francisco Superior Court Case No. CGC-12-518749 ("2012 Settlement Agreement"). *Prater Rep.* ¶¶ 120–25. Professor Prater's opinions in his eleventh reason provide "ICSOP wrongfully delayed payments to the County under the terms of the 2012 settlement agreement." *Id.* ¶¶ 126–29. ICSOP provides three arguments why Professor Prater cannot bring these opinions, and they are the same arguments underlying ICSOP's motion *in limine* No. 3,

---

[6] For the same reasons, ICSOP's challenge of Professor Prater's opinions in his fourth reason under FRE 403 is also rejected. *See ICSOP MIL 1* 19:11–23 ("Prater continually conflates the idea of a case reserve with the PAQR which is likely to confuse the issues and mislead the jury into thinking that the PAQR reasonable worst-case coverage exposure scenario represents the case reserve as the probable exposure.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

seeking to exclude the 2012 Settlement Agreement:  The 2012 Settlement Agreement (1) is inadmissible under FRE 408; (2) contains a confidentiality provision barring its use; and (3) is irrelevant because the County is not suing for breach of the 2012 Settlement Agreement.  *See generally ICSOP MIL 3*; *ICSOP MIL 1* 19:24–21:5.

As an initial matter, the 2012 Settlement Agreement is relevant to the County's bad faith claim.  California law dictates that "[a]n insurer's good or bad faith must be evaluated in light of the totality of the circumstances surrounding its actions."  *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 723 (2007).  One of the circumstances surrounding ICSOP's actions here is the fact that ICSOP agreed to pay the County's ongoing costs but then allegedly failed to do so.  Thus, Professor Prater's opinions about the 2012 Settlement Agreement rely on relevant evidence.

The Court finds ICSOP's second argument meritorious.  The 2012 Settlement Agreement's confidentiality provision says that the agreement is "inadmissible as evidence in any proceeding between them in connection with any other insurance claim or litigation except by either of the Parties hereto to enforce the terms of this Agreement."  *Salerno Decl. 1* ¶ 2, Ex. 1, *Deposition Transcript of Maria Gross*, Dkt. # 186, Ex. 20.[7]  The clause clearly states that the 2012 Settlement Agreement is admissible only in an action to enforce its terms.  The County concedes it is not trying to enforce the agreement in this action.  *ICSOP MIL 3 Opp.* 7:3–4 ("ICSOP is correct that the County has not asserted a claim for breach of the 2012 Settlement Agreement . . . .").  And the clause forbids use of the 2012 Settlement Agreement in any other litigation, which this suit clearly is.  Thus, the 2012 Settlement Agreement is inadmissible under the plain language of its own terms.[8]

However, this conclusion does not render Professor Prater's opinions in his tenth and eleventh reasons inadmissible since experts can rely on inadmissible evidence.  *See, e.g.*, *United States v. Gonzales*, 307 F.3d 906, 910 (9th Cir. 2002) ("An expert may base his opinion at trial on inadmissible facts and data of a type reasonably relied upon by experts in the field."); Fed R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").  "When inadmissible evidence used by an expert is admitted to illustrate and explain the expert's opinion, however, it is necessary for the court to instruct the jury that the [otherwise

---

[7] The Court cites the unredacted version of this exhibit.  The original filing can be found at Docket Number Entry 164-2.

[8] Because this analysis underlies ICSOP's motion *in limine* No. 3, the 2012 Settlement Agreement is inadmissible, and the Court **GRANTS** ICSOP's motion to exclude the 2012 Settlement Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

inadmissible] evidence is to be considered solely as a basis for the expert opinion and not as substantive evidence." *United States v. 0.59 Acres of Land*, 109 F.3d 1493, 1496 (9th Cir. 1997) (cleaned up).

ICSOP concedes that an expert may rely on inadmissible evidence, but responds that because the agreement is barred by FRE 408, Professor Prater's opinions still must be excluded. *See ICSOP MIL 1 Reply* 11:14–20. ICSOP is wrong about FRE 408's applicability, here. FRE 408 provides that evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim" "is not admissible . . . either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408. FRE 408, however, does allow evidence of a settlement for "another purpose." *Id.* The County is not bringing evidence of the 2012 Settlement Agreement to prove its validity or amount of the disputed claims. Instead, it is offering the evidence to show "that ICSOP had no intention of fulfilling the terms of the 2012 Settlement Agreement, and breached the implied covenant by continually placing its own interests ahead of the County's, culminating in the termination of policy benefits." *ICSOP MIL 3 Opp.* 5:21–23. This is an attempt to show bad faith by ICSOP, which is allowable as "another purpose" under FRE 408. *See Am. Gen. Life Ins. Co. v. James*, No. C–14–04242 DMR, 2015 WL 730010, at *6 (N.D. Cal. Feb. 19, 2015) (holding that "there is no generalized 'settlement privilege' under Rule 408" and finding settlement communications were not barred when offered as evidence of insurer's course of conduct); *Pasina ex rel. Taputu v. Cal. Cas. Indem. Exch.*, No. 2:08–CV–01199–RCJ–(RJJ), 2010 WL 3860646, at *21 (D. Nev. Sept. 28, 2010) (denying insurer's motion *in limine* to exclude evidence of insurer's failure to execute settlement agreement as it is "relevant to a jury determination of bad faith"). Thus, FRE 408 is not a bar for Professor Prater's opinions, and he can testify as to his opinions even though the 2012 Settlement Agreement is itself inadmissible.

> e.      *Fifth Basis*

Professor Prater's opinions in his twelfth reason—which assert ICSOP's retention of counsel was meant to mislead a jury and that ICSOP brought its defenses in bad faith—are challenged as contrary to law and this Court's prior ruling. *ICSOP MIL 1* 21:6–22:10.

The County makes no attempt to defend Professor Prater's mention of retaining counsel, and so the Court will grant ICSOP's request to bar Professor Prater from testifying as to that opinion. *See ICSOP MIL 1 Opp.* 20:18–21:17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

Professor Prater opines that ICSOP has breached the implied covenant of good faith and fair dealing by asserting defenses of late notice, *Prater Rep.* ¶¶ 130–36, the County's failure to cooperate, *id.* ¶ 137, that costs incurred by the County are not reasonable and necessary, *id.* ¶¶ 138–40, and the application of the aggregate limit in the ICSOP Policies to the County's claim, *id.* ¶¶ 141–43. The County concedes that Professor Prater cannot testify as to whether ICSOP's defenses and arguments of late notice, failure to cooperate, and aggregate policy limits were made in bad faith following the Court's summary judgment ruling permitting them. *See Sum. J. Order* 13–18; *ICSOP MIL 1 Opp.* 20:21–24.

The County contends, however, that it can still claim that ICSOP's assertion of the defense that the County's costs were unreasonable is evidence of bad faith. *ICSOP MIL 1 Opp.* 20:18–21:17 ("In light of the Court's summary judgment ruling, Professor Prater will limit his testimony in support of Reason No. 12 to a discussion of ICSOP's continued assertion of a defense based on the purported unreasonableness of the costs incurred by the County."). The County says that ICSOP failed to plead the unreasonable costs defense as an affirmative defense and tried to rectify the mistake by asserting in discovery that its failure-to-mitigate defense included a challenge to the County's unreasonable costs. *Id.* ICSOP has since withdrawn the failure-to-mitigate defense. *See* Dkt. # 98 at 1. The County thus asserts that Professor Prater can still argue that ICSOP's attempt to ever bring the unreasonable costs defense amounted to bad faith. *Id.* 21:9–12.

The Court finds that Professor Prater has insufficient factual support for his opinion to be reliable. The only evidence he points to is a response to an interrogatory where ICSOP describes the facts and support for its failure-to-mitigate defense, including: "The County may have incurred certain costs that may not have been reasonable and/or necessary." *See Prater Rep.* ¶¶ 138–40; *Newman Decl. 1* ¶ 8, Ex. 6, *ICSOP's Second Supplemental Responses to the County's First Set of Interrogatories*, Dkt. # 207-8. Professor Prater has interpreted this response as ICSOP attempting to shoehorn the unreasonable costs defense into the failure-to-mitigate defense. *See Prater Rep.* ¶ 138. The Court finds this to be quite a stretch to read this language as an attempt to slip in an extra defense. As such, this opinion is unreliable. Professor Prater cannot testify to his opinions underlying his twelfth reason because either the Court has already issued a contrary decision or because they are not adequately supported.

### f.    Sixth Basis

ICSOP argues that Professor Prater's opinions in his thirteenth reason, which states that the ceding of the Chino Claim to Fortitude Re incentivized ICSOP to engage in bad faith claims handling practices, are unreliable. *ICSOP MIL 1* 22:11–23:21. The County makes no attempt to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

defend this opinion. *See generally ICSOP MIL 1 Opp.* The Court agrees that the opinions are mere speculation without any supporting legal or factual basis. *See Stone Brewing Co., LLC v. MillerCoors LLC*, No. 3:18-cv-00331-BEN-LL, 2020 WL 907060, at *4 (S.D. Cal. Feb. 25, 2020) (finding the opinions of expert witnesses on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise). Professor Prater cannot offer testimony on the opinions underlying reason thirteen.

g.     *Seventh Basis*

ICSOP next contends that Professor Prater's opinions in his second reason and his opinion that ICSOP had an affirmative duty to investigate and determine on its own the number of occurrences is unreliable because they are contrary to law and an insurer's duties under an ultimate net loss policy. *ICSOP MIL 1* 23:22–25:3. The Court, however, finds that Professor Prater does not opine that ICSOP had an independent duty to investigate the Chino Airport claim. Instead, he provides evidence that ICSOP was aware of the possibility of more than one occurrence yet ignored and hid that evidence. *See, e.g., Prater Rep.* ¶¶ 55–57. "The issue here is whether [the insurer] considered all the information reasonably available to it at the time it denied the claim, and whether that information provided a basis for coverage." *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1624 (1996). "An insurance company may not ignore evidence which supports coverage. If it does so, it acts unreasonably towards its insured and breaches the covenant of good faith and fair dealing." *Id.* Professor Prater's opinions in his second reason are not contrary to law.

h.     *Eighth Basis*

ICSOP challenges Professor Prater's opinions in his third reason as unreliable, *ICSOP MIL 1* 25:4–20, but the County concedes that Professor Prater cannot and will not testify as to the reason following the Court's summary judgment rule, *ICSOP MIL 1 Opp.* 25:12–19. Thus, the third reason is also excluded.

In light of the foregoing, the Court **GRANTS in part** and **DENIES in part** ICSOP's motion *in limine* No. 1. The Court excludes Professor Prater's opinions set forth in: Paragraphs 73, 76, 113, 114, and 123 entirely, and the last sentence of 112; and all the paragraphs in his third, twelfth, and thirteenth reasons. Professor Prater also cannot testify to any opinions about ICSOP's retention of counsel. The remainder of Professor Prater's opinions are permissible.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

        *ii.*      *ICSOP's Motion* in Limine *No. 2 to Exclude Testimony of Jeffrey Kinrich*

The County's retained Mr. Kinrich to assess ICSOP's financial condition and the overall net worth of ICSOP's parent company, American International Group, Inc. ("AIG"), for the purposes of assessing punitive damages. *Declaration of Nicholas B. Salerno i/s/o ICSOP MIL 2*, Dkt. # 163-1 ("*Salerno Decl. 2*"), ¶ 2, Ex. 1, *Expert Report of Jeffrey H. Kinrich*, Dkt. # 163-2 ("*Kinrich Rep.*"), ¶ 6. ICSOP lodges two challenges to Mr. Kinrich's report. First, ICSOP argues that Mr. Kinrich should not be allowed to testify that "it seems prudent to consider AIG's financial condition when assessing ICSOP's financial condition," *see Kinrich Rep.* ¶ 32, because the opinion is speculative, unreliable, inadmissible, and contrary to law. *See ICSOP MIL 2* 8:25–11:25.

Second, Mr. Kinrich issued a supplemental report on ICSOP's net worth and net income based on a pooling agreement with AIG's subsidiaries to support the above opinion after the close of expert discovery, *Salerno Decl. 2* ¶¶ 4–5, Ex. 3, Dkt. # 184 ("*Kinrich Sup. Rep.*"), which ICSOP argues is untimely. *See generally ICSOP MIL No. 2.* The Court will assess both arguments.

        *a.*      *First Basis*

The Court finds Mr. Kinrich's opinion reliable. Mr. Kinrich explained that ICSOP's financial statements reveal that ICSOP's "revenues and expenses . . . are not being booked on the company's own books" and so "ICSOP's own financial statements . . . do[] not fully reflect its economic contributions to the combined entity [and] there's reason to look elsewhere including parent or sister companies." *Kinrich Rep.* ¶¶ 30–32. From that he opined that it is "prudent to consider AIG's financial condition when assessing ICSOP's financial condition." *Id.* ¶ 32. It is clear that the basis for Mr. Kinrich's opinion is his four decades of experience analyzing financial statements for purposes of business valuation and financial forensics. *See Declaration of Anthony S. Newman i/s/o Opp. to ICSOP MIL 2*, Dkt. # 204-1 ("*Newman Decl. 2*"), ¶ 10, Ex. F, Dkt. # 204-7 ("*Kinrich CV*"). And he developed the opinion only after looking at ICSOP's financial statements. *See Kinrich Rep.* ¶¶ 30–32. The Court, therefore, finds Mr. Kinrich's assessment of ICSOP's financials is a sufficiently reliable opinion. *See United States v. Kabov*, Nos. 19-50083, 19-50089, 2023 WL 4585957, at *7–8 (9th Cir. July 18, 2023) (rejecting attempt to exclude expert on the grounds that she did not "appl[y] reliable principles and methods to arrive at her conclusions" because her "testimony was based on 'her knowledge and experience,' not 'scientific or technical analysis'").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

The Court also finds that Mr. Kinrich's opinion is consistent with California law. California law permits the assessment of documents beyond the defendant's financials and net worth to determine the defendant's ability to pay. *See Zaxis Wireless Commc'ns. v. Motor Sound Corp.*, 89 Cal. App. 4th 577, 582 (2001) ("Net worth is too easily subject to manipulation to be the sole standard for measuring a defendant's ability to pay."); *Adams v. Murakami*, 54 Cal. 3d 105, 116 n.7 (1991) ("We decline . . . to prescribe any rigid standard for measuring a defendant's ability to pay."). Thus, amounts paid to the owner of a corporation or dividends paid to corporate shareholders are relevant evidence of a defendant's financial condition for purposes of punitive damages. *See, e.g.*, *Moore v. American United Life Ins. Co.*, 150 Cal. App. 3d 610, 642 (1984) (dividends paid out to a corporation's shareholders are part of the corporation's "net income" for punitive damages purposes because "[d]ividends . . . are profits pure and simple"); *Zaxis Wireless Commc'ns*, 89 Cal. App. 4th at 581 (finding it appropriate to look beyond a defendant's financial statements to assess its ability to pay punitive damages where the defendant had made a $6 million note payable to the corporate's sole owner). Thus, Mr. Kinrich is allowed to look to AIG's value as additional evidence of ICSOP's ability to pay.

And while California law forbids using a parent company's net worth as a proxy for the subsidiary-defendant's net worth when determining punitive damages, *see, e.g.*, *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1283 (1994) (holding an annual report of an insurer's corporate parent which contained no evidence of insurer's financial condition could not be used as evidence of insurer's financial condition so as to support award of punitive damages), Mr. Kinrich is not using AIG's net worth as a proxy. He begins by evaluating ICSOP's financial statements. *See Kinrich Rep.* ¶ 30. He *then* explains that ICSOP's revenue has been siphoned to its parent and sister companies through dividend payments, "payables," and the ceding of premium revenue. *Kinrich Rep.* ¶¶ 31–32. He thus opines that ICSOP's own financial statements do not fully reflect its financial condition. *Id.*; *Kinrich Dep. Tr.* 102:1–104:17 (describing how he looked at ICSOP's financials to determine that there are revenues and expenses not shown on the company's own books). While in his report Mr. Kinrich fails to determine what share of AIG's value is attributable to ICSOP, he apportions the value due to ICSOP in his supplemental report—which, as discussed below, is admissible. Therefore, Mr. Kinrich's opinion is reliably based on his knowledge and experience and is consistent with California law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|

| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania |
|---|---|

       *b.    Second Basis*

      The Court's scheduling order set an expert witness disclosure deadline for February 8, 2023, *see Scheduling Order*, Dkt. # 25, but the County disclosed Mr. Kinrich's supplemental report—where he apportioned ICSOP's net worth and net income from the values of the pooled AIG companies—on May 30, 2023.

      FRCP 26(a)(2)(B) provides that expert witnesses must provide a written report at the time of expert disclosure which contains a complete statement of all opinions the witness will express and the basis and reasons for them. Under Rule 26(a)(2)(D), a party must make expert disclosures and the accompanied expert report "at the times and in the sequence that the court orders." Under FRCP 37, when "a party fails to provide information or identify a witness as required by FRCP 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1); *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). This is typically a self-executing, automatic sanction, unless the party failing to disclose the information can show either a "substantial justification" for the failure or that the failure was harmless. *See Hoffman v. Construction Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008); Fed. R. Civ. P. 37(c)(1) advisory committee note to 1993 amendment ("The revision provides a self-executing sanction for failure to make a disclosure required by Rule 26(a)."); *Yeti by Molly Ltd.*, 259 F.3d at 1106–07.

      The Court finds that this violation of FRCP 26(a) does not result in the automatic sanctions of FRCP 37 because the delay was substantially justified and harmless. ICSOP, not the County, is primarily responsible for the delay. ICSOP did not produce a corporate designee to testify on the financial arrangements among ICSOP and its affiliates until March 9, 2023—over a month after Mr. Kinrich's initial report was disclosed. *Newman Decl. 2* ¶ 9. Mr. Kinrich was not able to determine from ICSOP's financials alone how the pooled AIG subsidiaries shared their profits. *See Kinrich Dep. Tr.* 51:22–52:19. Only after that deposition where AIG's shared controller revealed that the premiums ICSOP receives are ceded to other AIG companies could Mr. Kinrich make the allocation calculations in his supplemental report. *Id.* Thus, the delay in serving his supplemental report was substantially justified and due to the actions of ICSOP. *See, e.g.*, *Acrisure of Cal., LLC v. TLondon Ins. Servs., LLC*, No. 8:19-cv-00981-SB (RAOx), 2020 WL 8683091, at *3 (C.D. Cal. Dec. 17, 2020) (declining to exclude an untimely expert report because the other party was "not blameless in this matter, as they failed to timely produce all the relevant damage evidence"); *FastVDO LLC v. AT&T Mobility LLC*, No. 3:16-cv-00385-H-WVG, 2016 WL 9049523, at *2 (S.D. Cal. Dec. 28, 2016) (untimely supplemental expert report was substantially justified and not subject to exclusion where new

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01978 PSG (AS) | Date | February 27, 2024 |
|---|---|---|---|
| Title | San Bernardino County v. The Insurance Company of the State of Pennsylvania | | |

information on which the supplemental report was based was not disclosed until after the expert disclosure deadline).

And even if the delay had nothing to do with ICSOP's actions—as ICSOP repeatedly contends, *see, e.g.*, *ICSOP MIL 2 Reply* 9:6–11:20—the delay is harmless. ICSOP received the supplemental report prior to Mr. Kinrich's deposition and used most of his deposition to ask about it. *See generally Kinrich Dep. Tr.*; *Newman Decl. 2* ¶ 14. And ICSOP's rebuttal expert also had over a week with the supplemental report before his deposition and gave views about the calculation during the deposition. *Newman Decl. 2* ¶ 15, Ex. J, *Deposition Transcript of Peter Wrobel*, Dkt. # 204-11, 39:5–40:23, 41:6–45:19. Thus, the Court will not exclude Mr. Kinrich's supplemental report under FRCP 26(a).

Accordingly, the Court **DENIES** ICSOP's motion *in limine* No. 2.

IV.     Conclusion

In light of the foregoing, the Court:

**GRANTS in part** and **DENIES in part** the County's motion *in limine* No. 5. Dr. Love is permitted to testify to all his opinions in his report except his findings from extending Ms. Shipman's Hydrus model from 1980 to 2020.

**DENIES** the County's motion *in limine* No. 9.

**GRANTS in part** and **DENIES in part** ICSOP's motion *in limine* No. 1. The Court excludes Professor Prater's opinions set forth in: Paragraphs 73, 76, 113, 114, and 123 entirely; the last sentence of paragraph 112; and the paragraphs in his third, twelfth, and thirteenth reasons. Professor Prater also cannot testify to any opinions about ICSOP's retention of counsel.

**DENIES** ICSOP's motion *in limine* No. 2.

**GRANTS** ICSOP's motion *in limine* No. 3.

**IT IS SO ORDERED.**